# EXHIBIT A

## CASE INFORMATION

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

**Case Number:**  24STCV14693

PAIGE HOLLAND-THIELEN, AN INDIVIDUAL, ET AL. VS SPACE EXPLORATION TECHNOLOGIES CORPORATION, ET AL.

**Filing Courthouse:**  Stanley Mosk Courthouse

**Filing Date:** 06/12/2024
**Case Type:**  Wrongful Termination (General Jurisdiction)
**Status:**  Pending

Click here to access document images for this case

If this link fails, you may go to the Case Document Images site and search using the case number displayed on this page

## FUTURE HEARINGS

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

None

## PARTY INFORMATION

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

ABDULHAK AN INDIVIDUAL YAMAN **-** Plaintiff

BECK AN INDIVIDUAL SCOTT **-** Plaintiff

BURGESS LAURIE M **-** Attorney for Plaintiff

CLARK AN INDIVIDUAL REBEKAH **-** Plaintiff

HOLLAND-THIELEN AN INDIVIDUAL PAIGE **-** Plaintiff

LAWRENCE AN INDIVIDUAL DEBORAH **-** Plaintiff

MALLON AN INDIVIDUAL CLAIRE **-** Plaintiff

MOLINE AN INDIVIDUAL TOM **-** Plaintiff

MUSK AN INDIVIDUAL ELON **-** Defendant

NADEAU AN INDIVIDUAL ANDRE **-** Plaintiff

SHAVER ANNE B. **-** Attorney for Plaintiff

SPACE EXPLORATION TECHNOLOGIES CORPORATION DBA SPACEX A TEXAS CORPORATION **-** Defendant

## DOCUMENTS FILED

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

**Documents Filed (Filing dates listed in descending order)**

**06/12/2024** Notice of Case Assignment **-** Unlimited Civil Case

Filed by Clerk

**06/12/2024** Alternate Dispute Resolution Packet
Filed by Clerk

**06/12/2024** Civil Case Cover Sheet
Filed by Paige Holland-Thielen, an individual (Plaintiff); Yaman Abdulhak, an individual (Plaintiff); Scott Beck, an individual (Plaintiff) et al.

**06/12/2024** Complaint
Filed by Paige Holland-Thielen, an individual (Plaintiff); Yaman Abdulhak, an individual (Plaintiff); Scott Beck, an individual (Plaintiff) et al.


# PROCEEDINGS HELD

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

**Proceedings Held (Proceeding dates listed in descending order)**
None


# REGISTER OF ACTIONS

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

**06/12/2024** Complaint; Filed by: Paige Holland-Thielen, an individual (Plaintiff); Yaman Abdulhak, an individual (Plaintiff); Scott Beck, an individual (Plaintiff) et al. As to: Space Exploration Technologies Corporation (Defendant); Elon Musk, an individual (Defendant)

**06/12/2024** Civil Case Cover Sheet; Filed by: Paige Holland-Thielen, an individual (Plaintiff); Yaman Abdulhak, an individual (Plaintiff); Scott Beck, an individual (Plaintiff) et al. As to: Space Exploration Technologies Corporation (Defendant); Elon Musk, an individual (Defendant)

**06/12/2024** Alternate Dispute Resolution Packet; Filed by: Clerk

**06/12/2024** Notice of Case Assignment - Unlimited Civil Case; Filed by: Clerk

**06/12/2024** Case assigned to Hon. Mel Red Recana in Department 45 Stanley Mosk Courthouse

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

Electronically FILED by
Superior Court of California,
County of Los Angeles
6/13/2024 2:51 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By D. Kim, Deputy Clerk

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
SPACE EXPLORATION TECHNOLOGIES CORPORATION D/B/A SPACEX, a Texas corporation; and ELON MUSK, an individual

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
PAIGE HOLLAND-THIELEN, an individual
Additional Parties Attachment form is attached.

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

   You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO!* Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

   Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

   Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
*(El nombre y dirección de la corte es):* Stanley Mosk Courthouse

111 North Hill Street, Los Angeles, CA 90012

| CASE NUMBER: |
|---|
| *(Número del Caso):* |
| 24STCV14693 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Anne B. Shaver, 275 Battery St., 29th Floor, San Francisco, CA 94111, (415) 956-1000

DATE: 06/13/2024                 Clerk, by David W. Slayton, Executive Officer/Clerk of Court, Deputy
*(Fecha)*                        *(Secretario)*            D. Kim         *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Space Exploration Technologies Corp. and Elon Musk

   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

**Page 1 of 1**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100  [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

SUM-200(A)

| SHORT TITLE:<br>Holland-Thielen v. Space Exploration Technologies Corp. & Elon Musk | CASE NUMBER:<br>24STCV14693 |
|---|---|

**INSTRUCTIONS FOR USE**

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

[x] Plaintiff      [ ] Defendant      [ ] Cross-Complainant      [ ] Cross-Defendant

YAMAN ABDULHAK, an individual;
SCOTT BECK, an individual; REBEKAH
CLARK, an individual; DEBORAH
LAWRENCE, an individual; CLAIRE
MALLON, an individual; TOM MOLINE, an
individual and ANDRÉ NADEAU, an
individual

Page _____ of _____

**Page 1 of 1**

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

Anne B. Shaver (SBN 255928)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Phone: (415) 956-1000
Fax: (415) 956-1008
ashaver@lchb.com

Laurie M. Burgess (SBN 302270)
**BURGESS LAW OFFICES, P.C.**
498 Utah Street
San Francisco, CA 94110
Phone: (312) 320-1718
lburgess@burgess-laborlaw.com

*Attorneys for Plaintiffs*

Electronically FILED by
Superior Court of California,
County of Los Angeles
6/12/2024 1:44 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By C. Cervantes, Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF LOS ANGELES, CENTRAL DIVISION**

| | |
|---|---|
| PAIGE HOLLAND-THIELEN, an individual; YAMAN ABDULHAK, an individual; SCOTT BECK, an individual; REBEKAH CLARK, an individual; DEBORAH LAWRENCE, an individual; CLAIRE MALLON, an individual; TOM MOLINE, an individual and ANDRÉ NADEAU, an individual,<br><br>                    Plaintiffs,<br><br>        vs.<br><br>SPACE EXPLORATION TECHNOLOGIES CORPORATION D/B/A SPACEX, a Texas corporation; and ELON MUSK, an individual. | Case No. 24STCV14693<br><br>COMPLAINT FOR:<br><br>1. SEXUAL HARASSMENT – HOSTILE WORK ENVIRONMENT IN VIOLATION OF FEHA<br>2. RETALIATION IN VIOLATION OF FEHA<br>3. FAILURE TO PREVENT DISCRIMINATION, HARASSMENT, AND RETALIATION IN VIOLATION OF FEHA<br>4. SEXUAL HARASSMENT IN VIOLATION OF FEHA<br>5. DISCRIMINATION IN VIOLATION OF FEHA<br>6. WHISTLEBLOWER RETALIATION (LABOR CODE § 1102.5)<br>7. WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY<br>8. UNLAWFUL BUSINESS PRACTICES (BUSINESS AND PROFESSIONS CODE §17200) |

        Plaintiffs Paige Holland-Thielen, Yaman Abdulhak, Scott Beck, Rebekah Clark, Deborah Lawrence, Claire Mallon, Tom Moline, and André Nadeau ("Plaintiffs") complain and allege as follows:

**NATURE OF CASE**

1.    Elon Musk ("Musk") trumpets Space Exploration Technologies Corporation ("SpaceX") as the leader to a brave new world of space travel, but runs his company in the dark ages—treating women as sexual objects to be evaluated on their bra size, bombarding the workplace with lewd sexual banter, and offering the reprise to those who challenge the "Animal House" environment that if they don't like it they can seek employment elsewhere.

2.    The eight Plaintiffs in this case challenged this unlawful conduct in an "Open Letter" to management and, consistent with its "love it or leave it" policy, SpaceX summarily terminated them for daring to seek changes that would simply align the workplace culture with the norms of legal civility as defined by state and federal law. Upon information and belief, Defendant Musk personally ordered the Plaintiffs' terminations.

3.    This action seeks to hold SpaceX and Musk personally accountable for their gross misconduct.

**THE PARTIES**

4.    Plaintiff Paige Holland-Thielen was employed by SpaceX in Hawthorne, California from March 26, 2018 to June 16, 2022. She was at all relevant times hereto a resident of Los Angeles County.

5.    Plaintiff Yaman Abdulhak was employed by SpaceX in Hawthorne, California from approximately February 2018 to July 22, 2022. He was at all relevant times hereto a resident of Los Angeles County.

6.    Plaintiff Scott Beck was employed by SpaceX in Hawthorne, California from October 16, 2017 to June 16, 2022. He was at all relevant times hereto and continues to be a resident of Los Angeles County.

7.    Plaintiff Rebekah Clark was employed by SpaceX in Hawthorne, California from July 26, 2021 to August 17, 2022. She was at all relevant times hereto and continues to be a resident of Los Angeles County.

8.    Plaintiff Deborah Lawrence was employed by SpaceX in Redmond, Washington from approximately June 2018 to August 1, 2022. At all relevant times hereto, she was a resident

of the state of Washington. Just like all the other Plaintiffs, her work for SpaceX was directed by managers at its Hawthorne, California facility, she frequently worked in Hawthorne, and on information and belief, her unlawful termination from employment occurred in Hawthorne, California.

9.     Plaintiff Claire Mallon was employed by SpaceX in Hawthorne, California from approximately August 2017 to June 16, 2022. She was at all relevant times hereto a resident of Los Angeles County.

10.     Plaintiff Tom Moline was employed by SpaceX in Hawthorne, California from June 2, 2014 to June 16, 2022. He was at all relevant times hereto and continues to be a resident of Los Angeles County.

11.     Plaintiff André Nadeau was employed by SpaceX in Hawthorne, California from October 25, 2021 to July 29, 2022. He was at all relevant times hereto and continues to be a resident of Los Angeles County.

12.     Defendant SpaceX is a Texas Corporation headquartered in Hawthorne, California (Los Angeles County).

13.     Upon information and belief, Defendant Musk is the founder, Chief Executive Officer, Chairman, Chief Technology Officer, and majority owner of SpaceX. Upon information and belief, Musk is a resident of the state of Texas. Since SpaceX's founding, there has been and continues to be such unity of interest and ownership between SpaceX and Musk that there is no separate corporate status as between them. Further, Musk insists that all company decision-making run through him. Musk's maniacal control over personnel decisions at his businesses, including SpaceX, and his failure to give Human Resources personnel reign in creating and implementing protocols and best practices in keeping with the law has directly contributed to Plaintiffs' harm as alleged herein.

## JURISDICTION AND VENUE

14.     Venue is proper in Los Angeles County pursuant to Cal. Civ. Proc. Code §§ 395(a) and 395.5. Defendant SpaceX resides in Los Angeles County where it is headquartered. The acts, omissions, damages, and injury that form the basis of this lawsuit occurred at SpaceX's

COMPLAINT

headquarters in Los Angeles County. In addition, at the time of the allegations contained herein, Plaintiffs Paige Holland-Thielen, Yaman Abdulhak, Scott Beck, Rebekah Clark, Claire Mallon, Tom Moline, and Andre Nadeau each resided and worked for SpaceX in Los Angeles County.

15.    At all times relevant hereto, SpaceX was Plaintiffs' employer within the meaning of Government Code §§ 12926(d), 12940 (a), (h), (l), (h) (3) (A) and (i), and 12950, and the California Labor Code, and regularly employed in excess of five (5) or more persons and is therefore subject to the jurisdiction of this Court.

16.    This Court has general jurisdiction to adjudicate this unlimited civil case, in which the total amount in controversy, exclusive of interests and costs, exceeds $35,000.

17.    This Court has jurisdiction to adjudicate Plaintiffs' claims under the Fair Employment and Housing Act pursuant to California Government Code § 12965(b).

18.    This Court has personal jurisdiction over Defendants because they maintain a place of business located in Los Angeles County and regularly conduct business here.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

19.    At all times herein mentioned, the Fair Employment and Housing Act, California Government Code §§ 12900 through 12996 (hereinafter "FEHA"), was in full force and effect and binding on Defendants.

20.    Within the time provided by FEHA and in compliance with the requirements of FEHA, Plaintiffs filed complaints for the FEHA claims asserted herein with the California Civil Rights Division ("CRD"). Plaintiffs Paige Holland-Thielen, Yaman Abdulhak, Scott Beck, Rebekah Clark, Claire Mallon, Tom Moline, and André Nadeau each received a "right to sue" letter on June 10, 2024. As such, they have satisfied administrative prerequisites with respect to all FEHA-related filings.

21.    SpaceX terminated the employment of each Plaintiff between June 16, 2022 and August 17, 2022.  Therefore, Plaintiffs' state claims are timely filed and their FEHA-related cases are likewise timely filed within one year from which they received their "right to sue" letters.

COMPLAINT

**FACTUAL ALLEGATIONS**

**Facts Common to All Plaintiffs**

22.    During the course of their employment with SpaceX, each Plaintiff experienced exposure to unwanted conduct and comments of a sexual nature by Elon Musk that created a hostile and abusive work environment.

23.    Defendant Musk knowingly and purposefully created an unwelcome hostile work environment based upon his conduct of interjecting into the workplace vile sexual photographs, memes, and commentary that demeaned women and/or the LGBTQ+ community. Examples of the patently offensive material that Musk directly or indirectly caused to be published in the workplace include:

a.    Tweeting to the former CEO of YouTube, "if you touch my wiener, you can have a horse;"

b.    In response to a post voicing concerns that Musk's ownership of Twitter would increase hate crimes, tweeting to Alexandria Ocasio-Cortez "Stop hitting on me";

c.    Mocking Bill Gates by creating a meme of him with a pregnant-looking belly, accompanied by the text, "in case u need to lose a boner fast;"

d.    Tweeting to Senator Ron Wyden, "Why does ur pp [profile picture] look like u just came;"

e.    Commenting that competition "Can't get it up (to orbit) lol;"

f.    Posting an angry face in response to LGBTQ icons, with the statement "June is almost here – here it comes!" (Referencing gay pride month);

g.    Tweeting "Pronouns suck";

h.    Posting the caption "when you put "he/him in ur bio" accompanied by a picture of a soldier reveling in having just shot people by smearing their blood on his face;

i.    Circulating a meme teaching "ladies" what "Mansplaining" means;

j.    Announcing his "idea" to create a Texas university similar to MIT which he would call "TITS" and where "Ds [women's bra size] would get degrees," accompanied by an altered photo rendering a rocket to appear to be a giant penis;

COMPLAINT

k.      Posting a poll asking "Tesla should make hot Catgirl robots?" with two answers: "Absolutely" and "Of Course";

l.      Responding to a message from "Ms. Muff" saying "come here… no, come here" with an arrow pointing in a downward motion;

m.      Tweeting that "Jack in the Box should do double duty as a sperm donor clinic – name is [okay emoji];" and following it up with another Tweet: "wow, this mayo sure is salty;"

n.      In response to news about a sexual harassment charge against him, Musk posts, "Finally, we get to use Elongate as scandal name. It's kinda perfect;"

o.      Posting a photo still from a Monty Python movie with subtitle "Biggus Dickus;"

p.      Posting "erotic democracy >> sclerotic democracy;"

q.      Posting a photo of one dinosaur bent over another, saying "pull my hair" and the other retorting "I'm fuckin trying," with Musk's commentary, "Deep Thots;"

r.      Posting a cartoon depiction of a machine transforming into a man with a giant crane—appearing to be an erect penis—with the comment, "Check out our new crane;"

s.      Posting what appears to be an altered photograph of a stained glass window depicting the Virgin Mary giving Jesus a hand-job, along with the comment, "lil meme juice for the weekend;"

t.      Posting a skeletal x-ray of a person holding their lower back with the comment "My back after carrying my huge cock all day."

24.      A true and correct copy of these materials is attached hereto as Exhibit A, page four.

25.      Although Musk issued these posts on his own Twitter (now X) account, they immediately permeated the SpaceX workplace and employees could not escape seeing them or hearing about them. Musk's utterances were quickly circulated by email, Teams channels, and/or word of mouth and widely discussed.

COMPLAINT

26.     On information and belief, Musk knew that his vile and offensive posts permeated the workplace and that management took no action to prevent these posts from entering the workplace and took no action to remove them.

27.     Musk also intentionally drew employee attention to his Twitter feed by frequently using the account to report out company news. For instance, Musk's idea for "TITS" university was announced in the midst of reporting on a successful rocket launch. SpaceX also intentionally drew employee attention to Musk's Twitter feed: the company handbook references Musk's account as a source of approved company news that employees could share publicly. Unsurprisingly, employees and the public alike perceived Musk's Twitter feed to be a representation of SpaceX's culture itself.[1] Plaintiffs were each disgusted and offended by this barrage of Musk's illicit sexual banter and demeaning view of women and LGBTQ+ employees.

28.     Musk's conduct of interjecting this juvenile, grotesque sexual banter into the workplace had the wholly foreseeable and intentional result of encouraging other employees to engage in similar conduct. As pled below, several Plaintiffs experienced direct harassment that mimicked Musk's posts, such as showing a phallic symbol with the words "up, up, up," or making comments about "tits," which created a wildly uncomfortable hostile work environment.

29.     Plaintiffs experienced a pervasively sexist culture at SpaceX. In technical meetings, senior engineers referred to mechanical parts as "chodes" and "schlongs" (euphemisms for male genitals). It was also common for engineers to apply crude and demeaning names to products in an attempt at humor, often at the expense of women and LGBTQ+ individuals. For example, the name "Upskirt Camera" was used for a camera on first stage of the Falcon rocket that views the bottom of the second stage. The name "Fun Tunnel," a euphemism for anal sex, was used to refer to a structure on the Dragon vehicle that astronauts use to transfer to the International Space Station. The term "B-plugs," a euphemism for anal sex toys, was used to

---

[1] *See, e.g.*, https://www.yahoo.com/tech/elon-musk-made-gross-sex-130902137.html; https://mashable.com/article/elon-musk-sexist-joke-tweets; https://www.forbes.com/sites/sethcohen/2020/07/25/tesla-founder-elon-musk-uses-twitter-to-mock-transgender-inclusion/?sh=1145d301647f; https://cleantechnica.com/2020/12/16/real-friends-interrupt-you-when-you-are-making-a-mistake/.

COMPLAINT

describe for structures on the bottom of Dragon used to manage splashdown loads. Vibration tables were named after strip clubs.

30.    Management's flippant attitude toward harassment in the workplace is reflected in a video starring SpaceX's upper management, including Vice President of Human Resources ("HR") Brian Bjelde, President and COO Gwynne Shotwell, and Elon Musk that mocks and makes light of sexual misconduct and banter. For example, in one video scene the narrator discusses the type of people who would be invited to join flights to Mars and portrays a photo of a beautiful, large-breasted woman. Another scene features Mr. Bjelde having an employee demonstrate how to spank him in the "correct" manner. Upon information and belief, management screened this video at an employee holiday party in Hawthorne.

31.    SpaceX's hostile work environment received national attention when, on December 14, 2021, ex-SpaceX engineer Ashley Kosak published an article on Lioness about the sexual harassment and belittling conduct she experienced at SpaceX between 2017 and 2021, including upper management's failure to take corrective action.[2] On the same day, The Verge published a story containing accounts by five former SpaceX employees of sexual harassment they each experienced and SpaceX's failure to address it.[3]

32.    These articles immediately circulated throughout the workplace. Plaintiffs read them and had experienced and/or witnessed similar behavior and similar failure by management to take corrective action. Around this same time, President Shotwell sent an email to the company promising that SpaceX would undertake a "sexual harassment internal audit." Of course, the results of this so-called audit, when it finally came out, failed to identify any problems with the workplace culture or HR systems and triggered no substantive changes. President Shotwell also discredited Ms. Kosak's allegations in company meetings.

---

[2] https://www.lioness.co/post/at-spacex-we-re-told-we-can-change-the-world-just-don-t-try-to-stop-the-sexual-harassment

[3] https://www.theverge.com/22831380/spacex-employees-harassment-workplace-misconduct-elon-musk

33.     Plaintiffs' concerns regarding unaddressed harassment were further heightened when on May 19, 2022, the Business Insider reported that SpaceX had settled a claim by an ex-SpaceX flight attendant who accused Musk of asking her to "do more" during a massage, exposing his penis to her, and offering to buy her a horse in exchange for his desired sexual favors.

34.     Plaintiffs were extremely disturbed by the allegations contained in the May 19, 2022 article and found the allegations to be reflective of the harassing and degrading hostile workplace environment that they experienced at SpaceX.

35.     Instead of receiving any affirmation of SpaceX's commitment to create a safe workplace in response to these allegations, President Gwynne Shotwell issued a company-wide email supporting Musk and insisting that the anonymous complainant was lying. Musk himself issued a stream of Tweets furthering his inappropriate workplace behavior by making fun of the allegations and degrading the complainant.

36.     Plaintiffs were aghast at SpaceX's formal response to the allegations of Musk's sexual harassment—calling out and castigating the alleged victim—as this response obviously undermined, rather than affirmed, employees' right to be free from sexual harassment. These actions, which were carried out by SpaceX's top officers including Elon Musk and President Gwynne Shotwell, had the foreseeable and actual result of offending, causing distress, and intruding upon Plaintiffs' well-being so as to disrupt their emotional tranquility in the workplace and undermine their personal sense of well-being.

37.     In response to management's failure to appropriately address concerns raised by the Lioness and Verge articles and by the anonymous victim of Musk's alleged sexual provocation, and in response to their own experiences of grossly inappropriate sexual banter in the workplace, employees arranged meetings in an attempt to formally air their concerns and seek redress. For example, employees in Plaintiff Paige Holland-Thielen's department held an ad hoc "women's forum" on May 23, 2022 to discuss the allegations. Vice Presidents Mark Juncosa and Terrence O'Shaughnessy attended, as did HR Director Lindsay Chapman. At this meeting Plaintiff Holland-Thielen linked the allegations against Musk to his online statements and voiced

how distressing and disruptive it was to hear such sexist comments from her company's leader. Vice President Juncosa stated that Musk was not going to change.

38.    Another meeting about sexual harassment took place on May 24, 2022, hosted by manager Michael Saqr of the Starship Software team. At least one hundred people attended, including Plaintiffs Holland-Thielen, Abdulhak, Moline, and Nadeau. At this meeting, Plaintiff Holland-Thielen announced that she wanted to form a group to take more action to address hostile work environment concerns and invited anyone who was interested in participating to contact her to join.

39.    The other seven Plaintiffs reached out to Plaintiff Holland-Thielen to join the group to take further action to protest the culture of sexual harassment at SpaceX and management's failure to take action, and to initiate meaningful workplace changes. The employees used a non-work messaging channel to communicate with one another. Ultimately, Plaintiffs and their colleagues decided to draft an "Open Letter" to management asking that they implement changes including simply keeping Musk's inappropriate, unwelcome comments separate from the workplace.

40.    The Open Letter was a document contained on a Sharepoint site within SpaceX's intranet. The Open Letter began by referencing the "recent allegations against our CEO and his public disparagement of the situation," and stated that, "SpaceX's current systems and culture do not live up to its stated values, as many employees continue to experience unequal enforcement of our oft-repeated 'No Asshole' and 'Zero Tolerance' policies. This must change." The Letter also explicitly called out Musk's Twitter feed, noting that, "As our CEO and most prominent spokesperson, Elon is seen as the face of SpaceX—every Tweet that Elon sends is a de facto public statement by the company." The Letter was accompanied by a document titled "Unwelcome behavior on Elon's Twitter" which contained "a compilation of various examples of problematic Twitter posts by Elon, including 'unwelcome behavior', 'subtle sexual harassment', 'sexual harassment, and bullying directed at individuals and various marginalized groups via his Twitter posts." It characterized the posts as an "ongoing pattern of harassment" that "encourage[s] a workplace culture that is hostile to various marginalized and underrepresented

groups . . . (including sex, sexual orientation, age, and race/religion[.])" The Open Letter also included a document titled "Proposed Action Items" in which Plaintiffs asked SpaceX to take specific remedial action, including "address and condemn Elon's harmful Twitter behavior" and "define and uniformly respond to all forms of unacceptable behavior." The employees urged: "SpaceX must establish safe avenues for reporting and uphold clear repercussions for all unacceptable behavior, whether from the CEO or an employee starting their first day."

41.    A true and correct copy of the Open Letter, Unwelcome behavior on Elon's Twitter, and Proposed Action Items is attached hereto as Exhibit A.

42.    Plaintiffs Holland-Thielen, Beck, and Moline were the primary Open Letter authors; Plaintiffs Abdulhak, Clark, Mallon, Nadeau, and Lawrence contributed feedback and ideas.

43.    Plaintiffs Holland-Thielen, Beck, and Moline were the publicly listed "owners" of the Sharepoint page. They made the Sharepoint publicly viewable (within SpaceX's intranet only) on June 15, 2022. Plaintiffs sent a link to the Sharepoint page directly to top executives at 8:00 am Pacific Time. Starting at 9:00 am, Plaintiffs began to share the link via email and/or Teams channel with their colleagues.

44.    At approximately 1:00 pm that day, President Shotwell emailed Plaintiffs Holland-Thielen and Moline instructing them to "stop flooding employees [sic] communications channels immediately." Plaintiffs Holland-Thielen and Moline complied and ceased sharing the link to the Open Letter to group forums.

45.    On information and belief, on June 15, 2022, Elon Musk asked HR representative Stephen Duarte, a trusted sycophant, to travel from SpaceX's facility in Texas to Hawthorne to deal with the employees responsible for writing the Open Letter. Upon information and belief, after Duarte arrived in Hawthorne that day, he joined a phone call between Musk and VP of HR Bjelde wherein Musk directed Bjelde to fire the authors of the Open Letter. Upon information and belief, Bjelde replied that HR should at least perform an investigation first, otherwise it would "look bad"; but Musk simply replied, "I don't care – fire them."

46.     The next day, June 16, 2022, SpaceX terminated Plaintiffs Moline, Beck, Holland-Thielen, and Mallon. HR called each of them separately into a meeting with President Shotwell, VP Bjelde, and HR Representative Rebecca Balayan. In each meeting, VP Bjelde told the Plaintiff that SpaceX had performed an investigation and had determined that the Plaintiff was "instrumental in conceiving, writing, and distributing the Open Letter," and therefore SpaceX was terminating their employment effective immediately. That afternoon, Shotwell sent an email to the entire company with the subject line "Please stay focused on the SpaceX mission," in which she called the Open Letter "overreaching activism" and stated that, "[w]e performed an investigation and have terminated a number of employees involved."

47.     On the heels of the first wave of terminations, Plaintiffs Clark, Abdulhak, and Nadeau vocally protested the terminations and questioned management about their rationale for this retaliation in response to their colleagues' activity of seeking compliance with basic civil liberties protected under state and federal law.

48.     On June 17, 2022, the Falcon department held a meeting with Falcon Vice President Jon Edwards to discuss the terminations and the Open Letter. At this meeting, Plaintiff Abdulhak asked Edwards if Musk would be permitted to engage in sexual harassment "unchecked." Edwards responded that there was nothing that management could do about Musk or the environment he had created because "SpaceX is Elon and Elon is SpaceX." In response, Abdulhak asked how, given that fact, an investigation into allegations against Musk could be fair and impartial. He received no response.  Plaintiff Clark asked Edwards if SpaceX shared Musk's view that a woman's value was in her bra size, referring to his "TITS" Tweet. Edwards refused to answer the question. Edwards told employees that if they could not tolerate the existing environment in the workplace, they should leave and find employment elsewhere.

49.     After terminating the known authors of the Open Letter on June 16, 2022, HR continued its "investigation" to discover the identity of other leaders. Specifically, SpaceX obtained access to some portion of the chat group that Plaintiffs and their colleagues had used to organize the Open Letter. HR Director Lindsay Chapman, assisted by Stephen Duarte among other HR representatives, began to interrogate employees they knew or suspected of participating.

Chapman and her assistants interrogated Plaintiffs Abdulhak, Clark, Nadeau, and Lawrence about their role in supporting the drafting and dissemination of the letter, and/or in challenging management about the prior termination decisions. Following these coercive interrogations with Chapman, SpaceX terminated Plaintiffs Abdulhak, Clark, Nadeau, and Lawrence in retaliation for their protected conduct.

50.    On information and belief, up through and including the current date SpaceX has not taken action to redress the harassment, hostile work-environment, and retaliation described above.

**Facts Specific to Plaintiff Paige Holland-Thielen**

51.    Plaintiff Paige Holland-Thielen was employed by SpaceX in Hawthorne, California from March 26, 2018 to June 16, 2022 as an engineer.

52.    Ms. Holland-Thielen was subjected to sexual harassment at SpaceX. For example, in December 2021, she asked to speak with principal engineer Dan Mayo. Mr. Mayo came over to her desk and looked at her computer screen, which showed a graph that plotted data pointing downward. He made a sexual allusion to an erect penis and said, "How can we get it up, up, up?" Holland-Thielen reported the experience to her manager, Yuri Kubo. Mr. Kubo said that it was not the first time he had heard complaints about Mr. Mayo's behavior towards women and encouraged Holland-Thielen to report it to HR. Holland-Thielen was fearful of reporting this to HR, but worked up the courage to do so in approximately May of 2022. She was fired before she learned the outcome of HR's investigation, or if any investigation was ever undertaken. Upon information and belief, Mayo remained a principal engineer at SpaceX until he left in 2023.

53.    Ms. Holland-Thielen also experienced gender discrimination at SpaceX. In her first role as a Ground Software Engineer, she was the only woman on the ground software team and was treated differently than her male colleagues. Her team lead, Jack Dunaway, routinely rejected her proposals and requests to work on software projects despite her credentials as a software engineer. Instead, Jack gave these opportunities to Holland-Thielen's male colleagues and many times neglected to give Holland-Thielen assignments at all. This differential treatment affected Holland-Thielen's performance evaluations, where she was directed to get more

"technically familiar" with key software projects—but Jack repeatedly denied her the opportunities to do so, despite her requests. As a result, she was not promoted during the over two years that she spent on this team, March 2018 to April 2020, but instead remained a Level 1 (the level that SpaceX slated new graduates into), despite the fact that she had seven years of prior software experience.

54.     When Holland-Thielen expressed frustration about being routinely assigned rotations on the support or operations team within ground software instead of development roles, lead Kyle Hosford gave her the feedback that she was too aggressive. This was a double standard because of Holland-Thielen's gender. She never observed men being criticized for being too aggressive. In fact, her assigned mentor (a woman) once advised her that to succeed at SpaceX she should do what the most aggressive male would do in any situation.

55.     Realizing that she could not grow and succeed in ground software, in April 2020 Holland-Thielen switched teams and became a Launch Systems Software Engineer on the software automation tools team. Although her technical prowess was recognized once she moved, Holland-Thielen continued to experience gender discrimination at work. Her male colleagues also routinely took credit for her work. After she brought one such instance to her manager Justin Richeson's attention, he criticized her for being "too emotional."

56.     In October 2022, Holland-Thielen became a Lead Avionics Operations and Automation Engineer in the department now known as Starshield. Despite being a team lead of a critical functional area, she was routinely excluded from crucial planning meetings and had to ask her male colleagues to tell her when the meetings were held because she was not invited.

57.     Shortly after the Lioness and Verge articles came out in December 2021, Holland-Thielen attended a SpaceX women's forum where HR Director Lindsay Chapman addressed the articles' allegations. Instead of meaningfully addressing the issues, Chapman was dismissive about employees' concerns and made wholly inappropriate jokes, such as: "I've never been sexually harassed; I must not be hot enough." Chapman also stated that Ashley Kosak was not truthful. When employees asked Chapman what HR's rubric was for responding to complaints of sexual harassment, Chapman responded that, "It's hard to develop a rubric. Things are not black

COMPLAINT

and white, they are fifty shades of gray," alluding to a well-known sexually explicit fiction series. Ms. Chapman then giggled and said, "Maybe I should not have said that." Holland-Thielen was aghast at how the Director of HR treated very serious allegations like a joke.

58.     In the aftermath of the May 2022 Business Insider article and the company's offensive response thereto, Holland-Thielen created the chat group to coordinate a protest to and create changes in the company's handling of sexual harassment. Holland-Thielen was one of the primary authors of the Open Letter and one of the publicly listed "owners" of the Sharepoint page hosting the Open Letter. On June 15, 2022, Holland-Thielen emailed the link to the Open Letter to several executives and to the Women's Network.

59.     On June 16, 2022, HR called Holland-Thielen into a meeting with Brian Bjelde, President Shotwell, and HR representative Rebecca Balayan. Mr. Bjelde stated that they had performed an investigation, and determined that Holland-Thielen was "instrumental in conceiving, writing, and distributing the Open Letter" and as a result, SpaceX was terminating her employment.

60.     Holland-Thielen experienced severe emotional distress because of her treatment by SpaceX including stress, anxiety, panic, trauma, shame, and embarrassment.

**Facts Specific to Plaintiff Yaman Abdulhak**

61.     Plaintiff Yaman Abdulhak was employed by SpaceX in Hawthorne, California from approximately February 2018 to July 22, 2022 as an engineer.

62.     In January 2021, Plaintiff Abdulhak joined a diversity group within the software team at SpaceX. The first issue that the group decided to address was the experience of women working at SpaceX. Abdulhak led a survey of diverse applicants to seek to understand their perceptions of working for SpaceX. The group learned that Musk's online behavior was one reason why women did not want to work at SpaceX. Management did not respond when the group presented its findings.

63.     In approximately mid to late 2021, Plaintiff Abdulhak took SpaceX's "Appropriate Behavior" training. He noticed that many of the examples of inappropriate behavior cited in the training as something that would result in disciplinary action closely resembled the contents of

Musk's Tweets. He sent a message to HR Director Jamin Gallman with copies of the Tweets that he felt violated the policy. Gallman thanked Abdulhak and took no action. Abdulhak also raised the issue at a meeting of the software team's diversity group, of which manager Michael Saqr was a member. He was told there is nothing that can be done about Musk's Tweets.

64.     Thus, when the allegations of harassment in Kosak's Lioness article and Verge articles came out in December 2021, Abdulhak was deeply troubled. HR dismissed the essay as false and filled with inaccuracies. Abdulhak was very troubled by HR's handling of sexual harassment at the company and by the impact of HR's response on his coworkers. He was also aware of HR Director Linsday Chapman claiming she had no experiences with sexual harassment at work because she wasn't "hot enough." Thereafter, Abdulhak pressed HR, including Gallman, for updates on the progress of the alleged audit that management had purportedly undertaken to address the hostile work environment, but they continually told him to wait. When the Business Insider article came out on May 19, 2022 regarding Musk's alleged request for sexual favors from a SpaceX flight attendant, Abdulhak attended and vocally spoke out during the May 24, 2022 meeting with manager Saqr. Specifically, Abdulhak spoke up about how Musk's Twitter feed offended him, including Musk's comments mocking the sexual harassment allegations against himself. Shortly thereafter, Abdulhak joined the chat group organized by Plaintiff Holland-Thielen and helped to write the Open Letter.

65.     Abdulhak also vociferously protested the June 16 terminations of his colleagues in response to their work on the Open Letter. He spoke out against the terminations at the June 17 Falcon meeting led by Vice President Edwards and attended by HR representative Janet Fernandez, and again at another meeting later that day with Vice President Jessica Jensen and another member of HR. In response to statements by Jensen communicating that those involved in the Open Letter deserved to be terminated, Abdulhak said that he had been involved in the Open Letter and asked why he had not been terminated. Jensen looked at the HR representative and then responded, "I don't know." The following workday, June 20, 2022, Abdulhak's manager, Sandy Simmons, pulled him aside and told Abdulhak that he needed to choose between fostering a safe, diverse workforce and getting to Mars. Abdulhak responded that he was not

COMPLAINT

going anywhere, and wanted to continue to try to improve the work environment at SpaceX. Simmons said that it's Musk's company and we need to do whatever he says, including terminating Abdulhak if instructed to do so. When Abdulhak said that SpaceX was a terrible place for women to work and that many women did not feel safe there, Simmons replied that they could choose to leave.

66.     On July 15, 2022, HR Director Lindsay Chapman and HR representative Jordann Schoonover interrogated Abdulhak about the June 17, 2022 Falcon meeting with Jon Edwards. HR was "investigating" the meeting because Plaintiff Clark, who had also attended, had told her manager that the meeting made her feel unsafe at work, and her manager reported this to HR. Chapman and Schoonover asked Abdulhak what he had said and what he had heard at the meeting. Abdulhak reported that Edwards had acted in a physically intimidating manner and had made him feel uncomfortable both with what he said, and how angrily he said it. He reported that Edwards told the group that Musk controls everything at SpaceX and that nothing happens without his approval. He reported that Edwards had said, "Elon is SpaceX, and SpaceX is Elon." He also reported that Edwards said, "I cannot do anything about the company, so either make yourself okay with Elon's behavior or find someplace else to work." Abdulhak reported that in response to Edward's statements he had pointed out to Edwards that if Musk controlled everything at SpaceX, a sexual harassment investigation against Musk could not possibly be fair.

67.     Chapman and Schoonover interrogated Abdulhak again on July 21, 2022, this time about his role in the Open Letter. Chapman began the meeting by telling Abdulhak that the meeting was attorney-client privileged and that he could not discuss the meeting with anyone. Abdulhak acknowledged his participation in the Open Letter. A few hours later, Stephen Duarte came to Abdulhak's desk and told him that he was being placed on administrative leave. The next day, July 22, 2022, Chapman sent Abdulhak an email informing him that SpaceX was terminating his employment.

68.     Abdulhak suffered emotional distress because of his treatment by SpaceX.

- 17 -

**Facts Specific to Plaintiff Scott Beck**

69.     Plaintiff Scott Beck was employed by SpaceX in Hawthorne, California from October 16, 2017 to June 16, 2022 as an engineer.

70.     Beck was deeply troubled when Ashely Kosak's account of sexual harassment she had experienced was reported in the Lioness article in December 2021 because Beck had personally worked with Kosak. Beck was also distressed because he heard other female co-workers echo the concerns raised in the articles and express that they had themselves been sexually harassed at SpaceX and/or that they perceived that SpaceX tolerated sexual harassment.

71.     Beck was motivated by the reports in the articles, discussions regarding rampant harassment, and his own experiences of the hostile workplace environment to join a diversity and inclusion task force within his department, Materials & Processes, to address SpaceX's lack of response to improve working conditions for women and other minorities/members of the LGBTQ+ community.

72.     Shortly thereafter, the Business Insider article regarding Musk's alleged sexual harassment of a SpaceX employee was released. Beck was disturbed by the allegations against Musk—claims that appeared to be consistent with the attitude towards women that he observed and heard about—and he found President Shotwell's response to the article to be unconscionable. On May 25, 2022, Beck sent an email to Shotwell, Bjelde, and his manager Charles Kuehman. Beck expressed that, "I know few, if any, women at SpaceX who do not have a mental list of stories about times they were made to feel uncomfortable, unwelcome, or otherwise less-than at work." Beck also explained why the company's response to the allegations was so inappropriate, noting that "Elon is displaying to our employees and the world that at SpaceX if you come forward with your experiences, they will be disparaged and deflected, not investigated." He did not receive a response to this email.

73.     In late May 2022, Beck learned about Holland-Theilen's chat group from Plaintiff Mallon and joined it. He participated in drafting the Open Letter. He was one of the publicly-listed "owners" of the Sharepoint page where the Open Letter was hosted. On June 15, 2022,

- 18 -

Beck shared a link to the Open Letter with his immediate colleagues and the Teams channel for his diversity and inclusion task force.

74.    On June 16, 2022, HR called Beck into a meeting with Brian Bjelde, President Shotwell, and HR representative Rebecca Balayan. Bjelde stated that they had performed an investigation and determined that Beck was "instrumental in conceiving, writing, and distributing the Open Letter" and as a result, SpaceX was terminating his employment.

75.    Beck suffered emotional distress because of his treatment by SpaceX.

**Facts Specific to Plaintiff Rebekah Clark**

76.    Plaintiff Rebekah Clark was employed by SpaceX in Hawthorne, California from approximately July 26, 2021 to August 17, 2022 as an engineer.

77.    Upon her employment, Clark observed that the culture at SpaceX was hostile to women and that the culture was fostered from the top down by Musk. Clark observed that the male engineers that she worked with repeated Musk's inappropriate, sexually charged Twitter comments. For example, she heard comments about "tits" at work following Musk's Tweet about creating "TITS" university. The uninhibited openness of employees' repetition of Musk's foul "jokes" in the workplace created a great deal of discomfort and unease for Clark.

78.    Clark found the accounts reported in the articles in Lioness and The Verge to be consistent with, or reflective of, the work environment that she experienced. The Business Insider article alleging Musk's sexual harassment of an employee was the final straw for Clark. She was particularly dismayed by President Shotwell's response to the article. Clark believed that Shotwell's statements communicated to employees (and the world) that there was a strong tendency in the company to not treat issues of sexual harassment with the seriousness they should be treated, that SpaceX would often avoid holding accountable those responsible for such misconduct, and that Elon Musk could act with impunity. These articles and her own experience sparked Clark's desire to implement change in SpaceX's handling of sexual harassment complaints and the hostile work environment fostered by Musk's conduct.

79.    In June 2022, Clark learned about Holland-Thielen's chat group from Plaintiff Abdulhak and joined it. She assisted in drafting the Open Letter. On approximately June 16,

2022, she posted a link to the Open Letter Sharepoint page on her team's confluence page. On June 16, 2022, she learned that SpaceX had fired Plaintiffs Moline, Beck, Holland-Thielen, and Mallon. She became fearful of retaliation and confided in her manager, Sandy Simmons, that she had participated in drafting the Open Letter.

80.     The next day, June 17, 2022, Clark attended the Falcon meeting with Vice President Jon Edwards and HR representative Janet Fernandez. She observed that Mr. Edwards acted in an angry and aggressive manner in response to employees' concerns about the hostile work environment promulgated by tolerance for Musk's offensive, sexist comments and the imbalanced and inappropriate support for Musk in response to allegations that he sexually propositioned an employee during work time on a company jet. Clark spoke up at the meeting and suggested that Musk could simply state on Twitter that his views were his own and not the company's views—thereby at a minimum enabling the company to separate itself from and disavow Musk's disparaging diatribes. Edwards responded that this was impossible because SpaceX was Elon's company. Edwards stated, "SpaceX is Elon and Elon is SpaceX." Edwards also said that anyone who didn't like it could leave. Clark pushed Mr. Edwards to clarify whether Elon's "TITS" Tweet indicating that a woman is valued based upon the size of her breasts was the view of SpaceX. Edwards ultimately repeated words to the effect of, "SpaceX is Elon and Elon is SpaceX." Mr. Simmons was also present at this meeting. Simmons nodded his head in agreement with Edwards and repeated some of the things Edwards said, such as "the mission [to Mars] is the most important thing," and "there is no time to focus on these issues at work."

81.     After the meeting, Clark was deeply shaken and upset. She went for a walk with her manager, Sandy Simmons. Simmons stated that SpaceX had made it clear what it thinks of women, and that she needed to choose whether she wanted to keep working at the company or worry about the issues raised in the Open Letter.

82.     The following week, Mr. Simmons held a meeting with his team where he stated that he did not want to have any further group discussions about the Open Letter or the Falcon meeting with VP Edwards. Afterwards, Clark told Mr. Simmons that she was disappointed they could not talk further about these issues as a group, and that she did not feel safe at SpaceX.

- 20 -

Approximately one hour later Clark received a Teams message from HR representative Rebecca Balayan who informed her that Mr. Simmons had reported their conversation to HR. Ms. Balayan instructed Clark to work from home effective immediately and she did so.

83.    On July 29, 2022, HR Director Lindsay Chapman interrogated Clark about the June 17 Falcon meeting with VP Edwards. Plaintiff Clark reported what had taken place and told Chapman that SpaceX needed to make it clear that sexual harassment was not allowed, that women were valuable for more than just their bodies, and that the messaging needed to come from the top of the company since there seemed to be confusion as to the company's official position on these issues. Clark also stated that, "this was why we wrote the Open Letter."

84.    On August 12, 2022, Lindsay Chapman asked for another meeting with Clark. Chapman stated that she had concluded her investigation, that Ms. Clark had "incorrectly perceived" what had occurred at the Falcon meeting, and that Mr. Edwards had not acted inappropriately. Clark told Ms. Chapman that it felt as though SpaceX wanted to intimidate employees and prevent them from coming forward.

85.    On August 16, 2022, HR representative Jordann Schoonover asked Clark to meet with her. Ms. Schoonover stated that, "leadership has been watching you" and informed Clark that she was being terminated.

86.    Clark suffered emotional distress because of her treatment by SpaceX.

**Facts Specific to Plaintiff Deborah Lawrence**

87.    Plaintiff Deborah Lawrence was employed by SpaceX in Redmond, Washington from approximately June 2018 to August 1, 2022 as an engineer.

88.    During the entire course of her employment, Lawrence reported up to Mark Juncosa, Vice President of Vehicle Engineering in Hawthorne, California. Additionally, from September 2021 through the end of her employment, which includes the period when Lawrence engaged in protected activity and was wrongfully terminated, Lawrence's direct manager, Brian Riley, was in Hawthorne, California. Lawrence's pay statements issued from Hawthorne and listed the Hawthorne facility as her employer. When Lawrence was hired, her new hire paperwork included the following documents: the California Labor and Workforce Development Agency's

Disability Insurance Provisions pamphlet; a California Department of Fair Employment and Housing ("DFEH") Family Rights Act pamphlet; a California Paid Family Leave pamphlet; a DFEH Sexual Harassment pamphlet; and a California Labor Commissioner's "Time of Hire Pamphlet. It contained no Washington related material whatsoever. Therefore, Lawrence was a California employee.

89.     The Lioness and Verge articles sparked discussions among Lawrence and her co-workers about SpaceX's treatment of women. From her own observations of the workplace as sexist and hostile to women, Lawrence believed that the allegations in the articles were true.

90.     After the Business Insider published the allegation that Musk had sexually harassed an employee in May 2022, conversations about sexual harassment at SpaceX increased among Lawrence's co-workers. Lawrence was offended by President Shotwell's company-wide response claiming that Musk had to be innocent because it demonstrated a fundamental lack of understanding of how sexual harassment works: that is, just because Musk did not act sexually towards Shotwell, his equal, that did not mean he was innocent of harassing low-level employees.

91.     Frustrated with the company's lack of action to improve treatment of women, Lawrence joined Holland-Thielen's chat group in May 2022 and helped draft the Open Letter.

92.     On July 20, 2022, HR Director Lindsay Chapman and HR representative Stephen Duarte interrogated Lawrence about her involvement in the Open Letter. Ms. Chapman began the meeting by telling Lawrence that the meeting was attorney-client privileged and that she could not discuss the meeting with anyone. During this interrogation, Lawrence admitted that she was involved and acknowledged that screenshots Ms. Chapman showed her from the chat group, sent by "D", were her communications. Shortly after the meeting ended, HR informed Lawrence that she was being placed on administrative leave. On July 22, 2022, Chapman called Lawrence and informed her that she was being terminated effective August 1, 2022.

93.     Lawrence suffered emotional distress because of her treatment by SpaceX.

**Facts Specific to Plaintiff Claire Mallon**

94.     Plaintiff Claire Mallon was employed by SpaceX in Hawthorne, California from approximately August 2017 to June 16, 2022 as an engineer.

- 22 -

95.     Ms. Mallon experienced a number of harassing incidents during her employment at SpaceX. As a SpaceX intern in 2016, a male technician told her that their department did not have any women because it was difficult to find women capable of thinking logically and that women were biologically incapable of being engineers. She reported the incident to HR, which performed an investigation and told Mallon the comments she reported were a "miscommunication." HR took no discernible corrective action in response to her report.

96.     In 2019, Ms. Mallon reported a male colleague to HR for repeatedly bringing up sexually explicit topics with her, which made her uncomfortable. For example, he invited her to a sex party, told her about his sexual practices, and inquired about her own sexual activities. HR claimed that it conducted an investigation but did not take any discernible action to correct her colleague's behavior. SpaceX promoted this same male harasser to a senior role later that same year.

97.     Mallon also faced gender discrimination at work. In her 2018 performance evaluation, her manager criticized her for being too "coarse/straightforward." In her 2019 evaluation, Mallon was told to "absorb feedback cheerfully." This was a double standard applied to Mallon because of her gender, as Ms. Mallon never observed men criticized for being straightforward or for not taking feedback cheerfully enough.

98.     The double standards applied to women prevented Mallon from being promoted at the same rate as her male colleagues. In June 2019, her manager David Forinash cited her direct manner as a reason why he would not promote her to Engineer II. He said that she had been too brash when handling an incident in which a coworker had unplugged Mallon's test stand which compromised Mallon's work in a dangerous manner. Mallon never observed her male colleagues being criticized for being too direct; in fact, Mallon's Vice President, Mark Juncosa, was well-known for using harsh words. For example, Mallon heard him tell an employee to "take two fucking seconds to think about everything you do shitty."

99.     In the summer of 2019, Mallon asked her supervisor, David Forinash, what she needed to do to be promoted. She printed out the "leveling chart" describing the skills of engineers at each level, and asked him to fill out the skills she needed to obtain for Level II. He

told her that she needed to design and deliver a new product. She did so, and she was promoted in November 2019. However, in the conversation telling. Mallon that she would be promoted, Forinash also said that he was not going to highlight her new product because he did not want other engineers to think they had to do the same to earn a promotion. Several of Mallon's male colleagues were promoted to Level II without designing and delivering a new product. Mallon raised this disparate treatment to Forinash and asked that he backdate her promotion by six months, but he refused. Mallon reported the issue to HR but to Mallon's knowledge, HR took no action whatsoever.

100.    SpaceX also denied Mallon a promotion in August of 2021 due to her gender. At that time, she had transferred to a new team under manager Tom Bracht. Ms. Mallon asked Bracht if he would promote her to the role of Senior Engineer along with the transition. Mr. Bract told her, "I want to promote people that my team would be excited about," implying that promotions were a form of a popularity contest in an overwhelmingly male and sexist environment. In the following review cycle, Mr. Bracht rounded her review scores as follows: 3.8 (individual) to a 3, and 3.7 (teamwork) to a 4, resulting in a "3-4" score. When Mallon challenged the score "rounding" that he had done, Bracht did not defend his action but also refused to change it. This score was important because a "4-4" score would have made Mallon eligible for promotion to Senior Engineer, while a "3-4" would delay it by at least another review period. Bracht also failed to provide any meaningful feedback in response to Mallon's query on how she could improve her performance.

101.    In January 2022, Ms. Mallon filed a complaint with HR about a male co-worker whose conduct was making her uncomfortable. This co-worker asked her out to lunch multiple times per week, made suggestive comments to her, and stared at her chest. He acted the same way towards another female co-worker, who told Mallon that she also reported him to HR. HR's only response to Mallon's complaint was to suggest that Mallon give this coworker feedback on his conduct, as she would do with technical feedback about work.

102.    Due to her own experiences, Mallon was familiar with the culture of sexual harassment at SpaceX when the Lioness and Verge articles came out. Shortly after their

publication, Ms. Mallon attended the women's forum where HR Director Lindsay Chapman made light of the allegations, joking about her own attractiveness and how sexual harassment was not black and white but rather "fifty shades of grey." Mallon found Ms. Chapman's conduct to be inappropriate, offensive, and belittling to those with legitimate sexual harassment complaints.

103.    After the Business Insider article came out, on or about May 31, 2022, Mallon organized a women's forum for her department. Vice President of HR Brian Bjelde was present at the meeting. Mallon spoke at the meeting. She shared her experiences of sexual harassment and gender discrimination at SpaceX, and addressed the allegations against Musk. She said that she thought SpaceX was not adequately responding to those allegations or to sexual harassment as a whole.

104.    In late May 2022, Mallon learned about the chat group from Holland-Thielen and joined. She helped draft the Open Letter. On June 15, 2022, she emailed the link to the Open Letter to several executives, and to a Teams channel.

105.    On June 16, 2022, HR called Mallon into a meeting with Brian Bjelde, President Shotwell, and HR representative Rebecca Balayan. Mr. Bjelde stated that they had performed an investigation, and determined that Mallon was "instrumental in conceiving of, drafting, and distributing the Open Letter" and as a result, SpaceX was terminating her employment.

106.    Mallon suffered emotional distress because of her treatment by SpaceX.

**Facts Specific to Plaintiff Tom Moline**

107.    Plaintiff Tom Moline was employed by SpaceX in Hawthorne, California from June 2, 2014 to June 16, 2022 as an engineer.

108.    When The Verge and The Lioness published their articles detailing sexual harassment at SpaceX on December 14, 2021, Mr. Moline found that the articles reflected the misogynist culture that permeated SpaceX. His manager Arezoo Orouki addressed the articles at the team's next weekly team meeting in the week of December 19, 2021. At that meeting, Mr. Moline shared that he was deeply disturbed by President Shotwell's attempt to discredit Ms. Kosak (author of The Lioness article) and downplay the seriousness of the allegations. Mr. Moline stated he believed the women who had described instances of sexual harassment and

discrimination at SpaceX. At this meeting, two of Mr. Moline's female coworkers spoke up and corroborated the sexual harassment and discrimination experienced by female employees at SpaceX.

109.    Given the continuing implicit acceptance of the hostile work environment exposed in the December 2021 articles and experienced by his colleagues, Mr. Moline felt compelled to ensure that management took appropriate action to implement meaningful change. To that end, he kept a watchful eye on the progress of the company's promised "sexual harassment audit" that was purportedly undertaken in December. In March 2022, he sent a letter to President Shotwell requesting an update on the sexual harassment audit and expressing dissatisfaction with the lack of progress. He also published his letter on a confluence page (public to employees of SpaceX) called "Sexual Harassment Audit Update Template" so that other employees could use the letter as a template for sending their own feedback to President Shotwell and to press for an update by International Women's Day, March 8, 2022.

110.    Mr. Moline did not receive a response to his letter. On May 19, 2022, Moline saw the Business Insider report of Musk sexually harassing an employee—a report that affirmed his concern that the company urgently needed to address the sexist, hostile work environment. Aware of the need to acknowledge and confront these real workplace issues, Mr. Moline was outraged when, instead of using this occasion to implement self-reflection and change, President Shotwell supported Musk and effectively disclaimed the victim's experience. On or around May 24, 2022, Mr. Moline created two confluence pages. The first contained a letter to President Shotwell offering feedback on how her defense of Musk had run afoul of SpaceX's anti-harassment policy and would make employees feel afraid to report harassment. This letter was created as a template that employees could copy and submit on their own. Mr. Moline sent his letter to President Shotwell by email, asking her to reaffirm a commitment to mitigating sexual harassment at SpaceX, but she did not respond. The second confluence page was called "Sexual Harassment Response Action Items" and was intended to facilitate drafting and editing employee demands to the company around the handling of sexual harassment in the workplace. This page eventually became the starting point for the "Open Letter." Mr. Moline sent the links to these two

confluence pages to the Women's Network Teams channel. Within an hour or two of sending the links, Mr. Moline was contacted by Human Resources Director Lindsay Chapman and asked to meet with her and Jamin Gallman, another HR Director. The meeting took place on May 24, with Ms. Chapman interrogating Moline on why he had made the confluence pages.

111.    On June 2, 2022, Moline and Holland-Thielen met with the head of the Women's Network at SpaceX, Anny Ning. Ms. Ning had long been a leader at the company in calling out sexual harassment and discrimination and seeking a better working environment for women. Ms. Ning reported that she had had a meeting that day with President Shotwell and head of HR Brian Bjelde regarding employees' reaction to the allegations against Musk and President Shotwell's response thereto. Ms. Ning reported that it was clear that President Shotwell was not going to modify her email supporting Musk and debunking the victim, nor would the company take any other measures to address the issue.[4]

112.    Moline continued his efforts to effectuate change by working with his colleagues in drafting the Open Letter. He was one of the listed "owners" of the Sharepoint page on which the Open Letter was hosted. On June 15, 2022, he sent links to the Open Letter in several employee Teams channels.

113.    On June 16, 2022, HR called Moline into a meeting with Brian Bjelde, President Shotwell, and HR representative Rebecca Balayan. Mr. Bjelde stated that they had performed an investigation, and determined that Moline was "instrumental in conceiving, writing, and distributing the Open Letter" and as a result, SpaceX was terminating his employment.

114.    Moline suffered emotional distress because of his treatment by SpaceX.

**Facts Specific to Plaintiff André Nadeau**

115.    Plaintiff André Nadeau was employed by SpaceX in Hawthorne, California from October 25, 2021 to January 28, 2022 as an intern, and from then until July 29, 2022 as an engineer.

---

[4] Upon information and belief, Space X terminated Ms. Ning on June 16, 2022, the same day as Plaintiffs Holland-Thielen, Moline, Beck, and Mallon, for sharing the link to the Open Letter with the Women's Network.

116.    Nadeau was new to SpaceX at the time the Lioness and Verge articles came out in December 2021, having only been employed there for approximately two months. He was extremely alarmed by the allegations in the articles and SpaceX's lack of appropriate response. He believed that addressing the allegations seriously should be a top priority for the company.

117.    Nadeau attended a meeting with HR Director Lindsay Chapman shortly after the articles were published in order to ascertain what action SpaceX would be taking to address this type of behavior. To his surprise, far from discussing corporate accountability, Chapman asserted that the allegations were untrue. Other employees pushed back, saying that they had experienced similar instances of sexual harassment at SpaceX. Nadeau noticed that the employees in attendance were mostly women, and he was troubled that more men had not attended the meeting given that they made up a strong majority of the SpaceX workforce.  Nadeau spoke up, pointedly asking Ms. Chapman what SpaceX planned to do to make anti-harassment a priority.

118.    After the Business Insider article came out in May 2022, Nadeau was disgusted by the allegations against Musk and his Twitter response. Nadeau was further offended by President Shotwell's response in which she effectively "sided" with Musk's version of what occurred— i.e. *nothing*—and simply dismissed the alleged victim's claims. He felt that the company was once again sweeping claims of sexual harassment under the rug. Nadeau was concerned by the company's repeated non-action because he felt that the work culture was being ruined by the company's tolerance of sexual harassment. Nadeau specifically feared that the company's endorsement of Musk's crass response would embolden SpaceX employees to act similarly, exacerbating the harassment. On May 23, 2022, Nadeau attended the meeting where Plaintiff Holland-Thielen invited her co-workers to take action on this issue.

119.    Plaintiff Nadeau joined Holland-Thielen's chat group, and helped draft the Open Letter. On June 15, 2022, he sent the link to the Open Letter to several Teams channels.

120.    Nadeau was extremely troubled by the retaliatory firings of his colleagues and protested to management. Specifically, on June 27, 2022, Nadeau sent an email to Brian Bjelde asking to speak with him about the contents of the Open Letter and reiterating the importance of creating an "anti-harassment culture" at SpaceX. The same day, he emailed his Vice President,

Mark Juncosa, asking to speak with him about the terminations and expressing frustration that the terminations had shut down conversations about the points raised in the Open Letter. Bjelde responded that he would meet with Nadeau later, which he never did. Juncosa responded that Nadeau could raise his concerns in an upcoming Women's Forum meeting that Juncosa planned to attend, but did not agree to meet individually with Nadeau. In addition, on July 1, 2022, Nadeau attended a meeting with his director Brad Fosdick where Nadeau expressed his concern that the firings were illegal. Fosdick responded that he trusted SpaceX executives.

121.    On July 19, 2022, Lindsay Chapman asked Nadeau to meet with her. Ms. Chapman began the meeting by telling Nadeau that the meeting was attorney-client privileged and that he could not discuss the meeting with anyone. She then began to question him about his involvement in writing the Open Letter and Nadeau admitted that he was part of the chat group. Nadeau then told Ms. Chapman that he did not feel comfortable answering her questions because his colleagues had just been fired because of the Open Letter and that he feared retaliation. Nadeau said that he thought the terminations were illegal. Chapman threatened disciplinary action if he did not answer her questions. Nadeau asked if they could meet again so that he could finish answering her questions because he had another work meeting scheduled to start, and Ms. Chapman agreed. They met again on July 21, 2022. Again, Ms. Chapman asked Nadeau for the details of his role in the Open Letter and he answered all her questions.

122.    On July 29, 2022, Ms. Chapman emailed Nadeau asking for another meeting. When he arrived in the meeting room later that day, Ms. Chapman told him that SpaceX was terminating his employment.

123.    Nadeau suffered emotional distress because of his treatment by SpaceX.

**FIRST CAUSE OF ACTION**
SEXUAL HARASSMENT - HOSTILE WORK ENVIRONMENT
FEHA, Cal. Gov't Code §§ 12923, 12940
*On behalf of Plaintiffs Holland-Thielen, Abdulhak, Beck, Clark, Mallon, Moline, and Nadeau,*
*against all Defendants*

124.    Plaintiffs repeat and reallege all of the allegations set forth in the preceding paragraphs as if the same were fully set forth herein and with the same full force and effect.

- 29 -

125.    At all relevant times, the FEHA was in full force and fully binding upon Defendants.

126.    Section 12940 prohibits harassment in the workplace because of sex, gender, and sexual orientation. Defendants' pattern of sexually harassing conduct, and tolerance of same, constitutes a hostile work environment based on sex, gender, and sexual orientation, in violation of § 12940.

127.    The pattern of sexually harassing conduct at SpaceX and Defendants' tolerance of the same was severe and pervasive. It created a work environment that was hostile, intimidating, offensive, oppressive, and abusive.

128.    Defendant Musk, the CEO of Defendant SpaceX, engaged in sexually harassing conduct and creation of a hostile work environment personally. SpaceX tolerated Musk's unlawful behavior, and told employees who did not like it that they could find a job somewhere else. SpaceX failed to take any corrective action whatsoever.

129.    As a direct and proximate cause of Defendants' unlawful actions, Plaintiffs have suffered injury, including but not limited to emotional distress, entitling them to compensatory damages in an amount to be proven at trial.

130.    Defendants' actions were willful, malicious, fraudulent, and oppressive, and were committed with wrongful intent to harm Plaintiffs in conscious disregard of their rights. Plaintiffs are informed and believe and thereon allege that the actions of Defendants' employees, officers, directors, and/or managing agents were undertaken with the prior approval, consent, and authorization of Defendants and were subsequently authorized and ratified by them as well by the and through their officers, directors, and/or managing agents. Plaintiffs are therefore entitled to recover punitive damages in an amount according to proof at trial.

131.    Plaintiffs are entitled to reasonable attorneys' fees and costs pursuant to California Government Code § 12965(b).

## SECOND CAUSE OF ACTION
RETALIATION
FEHA, Cal. Gov't Code §12940(h)
*On behalf of Plaintiffs Holland-Thielen, Abdulhak, Beck, Clark, Mallon, Moline, and Nadeau, against all Defendants*

132.    Plaintiffs repeat and reallege all of the allegations set forth in the preceding paragraphs as if the same were fully set forth herein and with the same full force and effect.

133.    At all times relevant to this action, FEHA was in full force and binding upon Defendants. FEHA requires Defendants to refrain from retaliating against any employee for exercising rights under FEHA, including, but not limited to, complaining of discrimination and/or harassment.

134.    FEHA also makes it an unlawful employment practice for Defendants to retaliate against any employee for opposing conduct that the employee reasonably and in good faith believed constituted unlawful discrimination or harassment.

135.    Plaintiffs exercised their rights under FEHA including, but not limited to, complaining of and opposing discrimination, harassment, and a hostile work environment.

136.    Defendants, as alleged herein above, retaliated against Plaintiffs for exercising their rights under the FEHA, including but not limited to complaining of and opposing the discrimination, harassment, and hostile work environment that they observed and that they were being subjected to by Defendants, and protesting the wrongful terminations of their colleagues who had engaged in this protected activity.

137.    Plaintiffs' exercise of their rights under FEHA was a motivating reason for Defendants' retaliation towards Plaintiffs and termination of their employment as complained of herein.

138.    As a direct and proximate result of Defendants' retaliation, Plaintiffs have suffered, and continue to suffer, substantial damages including, but not limited to, back wages, future wages, lost benefits, emotional distress, and other pecuniary and non-pecuniary losses in an amount to be proven at trial. Plaintiff Holland-Thielen has suffered severe emotional distress and discomfort, including stress, anxiety, panic, trauma, shame, and embarrassment, all to her

COMPLAINT

detriment and damage in amount not fully ascertained but within the jurisdiction of this court and subject to proof at the time of trial.

139.    Defendants' actions were willful, malicious, fraudulent, and oppressive, and were committed with wrongful intent to harm Plaintiffs in conscious disregard of their rights. Plaintiffs are informed and believe and thereon allege that the actions of Defendants' employees, officers, directors, and/or managing agents were undertaken with the prior approval, consent, and authorization of Defendants and were subsequently authorized and ratified by them as well by the and through their officers, directors, and/or managing agents. Plaintiffs are therefore entitled to recover punitive damages in an amount according to proof at trial.

140.    Plaintiffs are entitled to reasonable attorneys' fees and costs pursuant to California Government Code § 12965(b).

### THIRD CAUSE OF ACTION
FAILURE TO PREVENT DISCRIMINATION, HARASSMENT AND RETALIATION IN VIOLATION OF FEHA
California Government Code §12940(k)
*On behalf of Plaintiffs Holland-Thielen, Abdulhak, Beck, Clark, Mallon, Moline and Nadeau, against Defendant SpaceX*

141.    Plaintiffs repeat and reallege all of the allegations set forth in the preceding paragraphs as if the same were fully set forth herein and with the same full force and effect.

142.    At all times hereto, the FEHA, including Government Code§ 12940(k), was in full force and effect and was binding upon Defendants. This subsection imposes a duty on SpaceX to take all reasonable steps necessary to prevent the discrimination, harassment, and retaliation alleged herein from occurring. As alleged above, Defendants violated this subsection and breached their duty by failing to take all reasonable steps necessary to prevent harassment and retaliation from occurring.

143.    Specifically, Plaintiffs complained about acts of sexual harassment they had experienced or observed, complained about Musk's personal contribution to the hostile work environment as alleged above, yet Defendants did nothing to remedy the harassment or prevent further harassment.  In fact, managers expressly told Plaintiffs that the company would *not* attempt to correct Musk's behavior or prevent his offensive sexually charged comments and vile

COMPLAINT

jokes from being communicated in the workplace, that SpaceX "could not" change the environment because Musk "owned" the Company, and suggested that anyone who could not put up with the work environment should leave and find work elsewhere.

144.    Plaintiffs further complained about the retaliation visited on their colleagues after the initial wave of firings. Plaintiffs communicated to HR that the firings were illegal and seemed designed to intimidate employees from speaking up about sexual harassment. Not only did Defendant do nothing to prevent or remedy this retaliation, it furthered it by then firing the employees who complained about retaliation.

145.    The above said acts of Defendant constitutes violations of the FEHA and were a proximate cause in Plaintiffs' damages as stated below.

146.    As a direct and proximate result of Defendant's failure to prevent harassment and retaliation, Plaintiffs have suffered, and continue to suffer, substantial damages including, but not limited to, back wages, future wages, lost benefits, emotional distress, and other pecuniary and non-pecuniary losses in an amount to be proven at trial. Plaintiff Holland-Thielen has suffered severe emotional distress and discomfort, including stress, anxiety, panic, trauma, shame, and embarrassment, all to her detriment and damage in amount not fully ascertained but within the jurisdiction of this court and subject to proof at the time of trial.

147.    Defendant's actions were willful, malicious, fraudulent, and oppressive, and were committed with wrongful intent to harm Plaintiffs in conscious disregard of their rights. Plaintiffs are informed and believe and thereon allege that the actions of Defendant's employees, officers, directors, and/or managing agents were undertaken with the prior approval, consent, and authorization of Defendant and were subsequently authorized and ratified by it as well by the and through its officers, directors, and/or managing agents. Plaintiffs are therefore entitled to recover punitive damages in an amount according to proof at trial.

148.    Plaintiffs are entitled to reasonable attorneys' fees and costs pursuant to California Government Code § 12965(b).

COMPLAINT

**FOURTH CAUSE OF ACTION**
SEXUAL HARASSMENT
FEHA, Cal. Gov't Code § 12940(j)
*On behalf of Plaintiff Mallon against Defendant SpaceX*

149.     Plaintiff Mallon repeats and realleges all of the allegations set forth in the preceding paragraphs as if the same were fully set forth herein and with the same full force and effect.

150.     At all times relevant to this action, FEHA was in full force and binding upon Defendants. FEHA requires Defendants to refrain from harassing any employee on the basis of a protected characteristic, including, but not limited to gender and sex. FEHA also makes it an unlawful employment practice for Defendants to harass any employee based upon the perception that the employee is a member of a protected class of that the employee is taking or has taken certain actions because the employee is a member of a protected class.

151.     Pursuant to California Government Code §12940(j)(3), SpaceX's supervisors are personally liable for any harassment prohibited by FEHA that is perpetrated by them.

152.     Plaintiff Mallon was a member of a protected class within the meaning of California Government Code §12940 et. seq., because she is a female and Defendants were aware of her gender.

153.     Plaintiff Mallon reported numerous instances of sexual harassment by co-workers to SpaceX's HR department, but HR failed to take any steps to address or remediate the harassment, and Mallon continued to experience it on an on-going basis until the time of her wrongful termination.

154.     In addition to the foregoing, California Government Code §12940(i) also prohibits any individual from actually or attempting to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under FEHA.

155.     If an individual participates in the decision-making process, tacitly approves of the improper action, fails to take action upon learning of the unlawful conduct, or participates in the unlawful conduct that is the basis of the discriminatory condition, the individual is considered to have aided and abetted under FEHA. *Matthews v. Superior Court* (1995) 34 Cal.App.4th 598.

156.    Here, SpaceX's HR representatives had the ability to stop the illegal activity and harassment experienced by Mallon. However, they not only failed to take any actions to stop the illegal conduct, but, as alleged herein, they tacitly approved of the harassing behavior and discriminatory conduct that was undertaken towards Mallon.

157.    As a direct and proximate result of Defendant's harassment, Mallon has suffered, and continues to suffer, substantial damages including, but not limited to, back wages, future wages, lost benefits, emotional distress, and other pecuniary and non-pecuniary losses in an amount to be proven at trial.

158.    Defendant's actions were willful, malicious, fraudulent, and oppressive, and were committed with wrongful intent to harm Plaintiffs in conscious disregard of their rights. Plaintiff is informed and believe and thereon allege that the actions of Defendant's employees, officers, directors, and/or managing agents were undertaken with the prior approval, consent, and authorization of Defendant and were subsequently authorized and ratified by it as well by the and through its officers, directors, and/or managing agents. Plaintiff is therefore entitled to recover punitive damages in an amount according to proof at trial.

159.    Plaintiff is entitled to reasonable attorneys' fees and costs pursuant to California Government Code § 12965(b).

**<u>FIFTH CAUSE OF ACTION</u>**
DISCRIMINATION
FEHA, Cal. Gov't Code §12940(a)
*On behalf of Plaintiffs Holland-Thielen and Mallon against Defendant SpaceX*

160.    Plaintiffs repeat and reallege all of the allegations set forth in the preceding paragraphs as if the same were fully set forth herein and with the same full force and effect.

161.    At all times relevant to this action, FEHA was in full force and binding upon Defendants. FEHA requires Defendants to refrain from discriminating against any employee "in terms, conditions, or privileges of employment," including, but not limited to, failing to promote, or demoting such employee, on the basis of a protected characteristic, including, but not limited to gender.

COMPLAINT

162.    FEHA also makes it an unlawful employment practice for Defendants to discriminate against any employee based upon the perception that the employee is a member of a protected class or that the employee is taking or has taken certain actions because the employee is a member of a protected class.

163.    Plaintiffs Holland-Thielen and Mallon were members of a protected class within the meaning of California Government Code §12940 *et. seq*., because Plaintiffs are women. Defendants were aware of Plaintiffs' gender.

164.    If an individual participates in the decision-making process, tacitly approves of the improper action, fails to take action upon learning of the unlawful conduct, or participates in the unlawful conduct that is the basis of the discriminatory condition, the individual is considered to have aided and abetted under FEHA. *Matthews v. Superior Court* (1995) 34 Cal.App.4th 598.

165.    Here, Plaintiffs' managers and SpaceX's HR department had the ability to stop the illegal activity and discrimination experienced by Plaintiffs; however, managers and HR not only failed to take any actions to stop the discriminatory conduct, but, as alleged herein, they participated in conduct and decision- making processes designed to illegally discriminate against Plaintiffs as well as tacitly approved of the discriminatory conduct that was undertaken towards Plaintiffs.

166.    At all times relevant to this action, SpaceX unlawfully discriminated against Plaintiffs Holland-Thielen and Mallon as previously alleged, on the basis of Plaintiffs' gender and sex, including by denying them work opportunities, giving them less favorable performance reviews than men with similar or worse performance, and refusing to promote them.

167.    Defendant was substantially motivated to discriminate against Plaintiffs including, but not limited to, by denying them work opportunities, giving them less favorable performance reviews than men with similar or worse performance, and refusing to promote them, because of their gender.

168.    As a direct and proximate result of Defendant's discrimination, Plaintiffs have suffered, and continues to suffer, substantial damages including, but not limited to, back wages,

future wages, lost benefits, emotional distress, and other pecuniary and non-pecuniary losses in an amount to be proven at trial.

169.    Defendant's actions were willful, malicious, fraudulent, and oppressive, and were committed with wrongful intent to harm Plaintiffs in conscious disregard of their rights. Plaintiffs are informed and believe and thereon allege that the actions of Defendant's employees, officers, directors, and/or managing agents were undertaken with the prior approval, consent, and authorization of Defendant and were subsequently authorized and ratified by it as well by the and through its officers, directors, and/or managing agents. Plaintiffs are therefore entitled to recover punitive damages in an amount according to proof at trial.

170.    Plaintiffs are entitled to reasonable attorneys' fees and costs pursuant to California Government Code § 12965(b).

**SIXTH CAUSE OF ACTION**
WHISTLEBLOWER RETALIATION
California Labor Code §1102.5
*On behalf of all Plaintiffs against all Defendants*

171.    Plaintiffs repeat and reallege all of the allegations set forth in the preceding paragraphs as if the same were fully set forth herein and with the same full force and effect.

172.    At all times material to this Complaint, Labor Code §1102.5 was in effect and binding on SpaceX. This section requires SpaceX, or any person acting on behalf of SpaceX, to refrain from retaliating against an employee who discloses information to a person with authority over the employee or to another employee who has authority to investigate, discover, or correct the violation or noncompliance, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

173.    Labor Code 1102.5 also prohibits SpaceX, or any person acting on behalf of SpaceX, from retaliating against an employee because SpaceX believes that the employee disclosed or may disclose information to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the

violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

174. As alleged hereinabove, Plaintiffs disclosed to SpaceX, including SpaceX's Human Resources Department and supervisors, the illegal discrimination, harassment, and retaliation that was taking place at SpaceX in violation of state and federal laws. Plaintiffs also disclosed SpaceX's failure to redress unlawful harassment including the creation and perpetuation of a hostile work environment in violation of state and federal laws.

175. Separately, Plaintiffs Abdulhak, Clark, and Nadeau disclosed that SpaceX terminated the employment of Plaintiffs Moline, Beck, Holland-Thielen, and Mallon in violation of state and federal laws.

176. All of the individuals that Plaintiffs disclosed the illegal behavior to either had authority over Plaintiffs or the authority to investigate, discover, or correct the violations.

177. SpaceX retaliated against Plaintiffs for whistleblowing by terminating their employment in violation of Labor Code §1102.5.

178. As a direct and proximate result of SpaceX's conduct, Plaintiffs have suffered, and continue to suffer, substantial damages including, but not limited to, back wages, future wages, lost benefits, emotional distress, and other pecuniary and non-pecuniary losses in an amount to be proven at trial. Plaintiff Holland-Thielen has suffered severe emotional distress and discomfort, including stress, anxiety, panic, trauma, shame, and embarrassment, all to her detriment and damage in amount not fully ascertained but within the jurisdiction of this court and subject to proof at the time of trial.

179. Defendants' actions were willful, malicious, fraudulent, and oppressive, and were committed with wrongful intent to harm Plaintiffs in conscious disregard of their rights. Plaintiffs are informed and believe and thereon allege that the actions of Defendants' employees, officers, directors, and/or managing agents were undertaken with the prior approval, consent, and

authorization of Defendants and were subsequently authorized and ratified by them as well by the and through their officers, directors, and/or managing agents. Plaintiffs are therefore entitled to recover punitive damages in an amount according to proof at trial.

180.    Pursuant to Labor Code §1102.5(f) and in addition to the foregoing, Plaintiffs are entitled to the imposition and recovery of a civil penalty of $10,000.00 for each violation.

181.    Plaintiffs are entitled to reasonable attorneys' fees and costs pursuant to California Government Code § 1102.5(j).

**SEVENTH CAUSE OF ACTION**
WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY
*On behalf of all Plaintiffs against all Defendants*

182.    Plaintiffs repeat and reallege all of the allegations set forth in the preceding paragraphs as if the same were fully set forth herein and with the same force and effect.

183.    It is well-established public policy in the state of California to "protect and safeguard the right an opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgement," and to "prevent and deter unlawful employment practices and redress the adverse effects of those practices on aggrieved persons." Gov. Code §§12920, 12920.5.

184.    During their employment at SpaceX, each Plaintiff actively sought to create a safe work environment for women and members of the LGBTQ+ community, to prevent and deter unlawful employment practices, and/or protested the wrongful termination of others who engaged in such activity.

185.    Plaintiffs' above activities constituted a substantial motivating reason for SpaceX's disciplinary action and termination of each of them.

186.    Each Plaintiff was harmed by SpaceX's disciplinary action and termination of their employment.

187.    SpaceX's termination of Plaintiffs' employment was a substantial factor in causing Plaintiffs' harm.

188.    As a direct and proximate result of SpaceX's conduct, Plaintiffs have suffered, and continue to suffer, substantial damages including, but not limited to, back wages, future wages,

COMPLAINT

lost benefits, emotional distress, and other pecuniary and non-pecuniary losses in an amount to be proven at trial. Plaintiff Holland-Thielen has suffered severe emotional distress and discomfort, including stress, anxiety, panic, trauma, shame, and embarrassment, all to her detriment and damage in amount not fully ascertained but within the jurisdiction of this court and subject to proof at the time of trial.

189.    Defendants' actions were willful, malicious, fraudulent, and oppressive, and were committed with wrongful intent to harm Plaintiffs in conscious disregard of their rights. Plaintiffs are informed and believe and thereon allege that the actions of Defendants' employees, officers, directors, and/or managing agents were undertaken with the prior approval, consent, and authorization of Defendants and were subsequently authorized and ratified by them as well by the and through their officers, directors, and/or managing agents. Plaintiffs are therefore entitled to recover punitive damages in an amount according to proof at trial.

**EIGHTH CAUSE OF ACTION**
UNLAWFUL BUSINESS PRACTICES
California Business and Professions Code §17200
*On behalf of all Plaintiffs against all Defendants*

190.    Plaintiffs repeat and reallege all of the allegations set forth in the preceding paragraphs as if the same were fully set forth herein and with the same full force and effect.

191.    Plaintiffs are informed, believe, and based thereon allege, that the practices alleged herein constitute an unlawful, unfair, and/or fraudulent business practice, as set forth in Business & Professions Code §17200, *et. seq.*

192.    Plaintiffs are informed, believe, and based thereon allege, that the practices alleged herein present a continuing threat to members of the public as Defendants conducted and continue to conduct business activities in California while failing to comply with the legal mandates cited herein.

193.    Furthermore, skirting the legal mandates cited herein presents a threat to the general public in that the enforcement of such laws is essential to ensure that all California employers complete equally, and that no California employer receives an unfair competitive advantage at the expense of its employees.

194.    As a result of Defendants' conduct, Plaintiffs have suffered damages, in an amount to be determined according to proof at trial.

195.    Defendants, engaging in the conduct hereinabove alleged, acted fraudulently, maliciously, and oppressively, and thereby entitling Plaintiffs to an award of punitive damages pursuant to California Civil Code §3294.

196.    As a result of Defendants' unlawful and unfair business practices, Plaintiffs are entitled and do seek restitution, injunctive relief and other appropriate relief available under Business and Professions Code §§17200 and 17203.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seeks judgment against Defendants, and each of them, in an amount according to proof, as follows:

1.    For an order declaring that Defendants' conduct violates the statutes and laws referenced herein;

2.    For an order finding in favor of Plaintiffs on all counts asserted herein;

3.    For general, compensatory, and consequential damages according to proof, including, but not limited to, for lost wages, earnings, and other employee benefits, emotional distress, and all other sums of money, together with interest on these amounts;

4.    For all liquidated damages and statutory penalties authorized or required by law;

5.    For restitution of all wrongfully withheld amounts in an amount according to proof;

6.    For special damages according to proof;

7.    For all equitable relief;

8.    For general damages for mental pain and anguish and emotional distress;

9.    For preliminary and permanent public injunctions enjoining and restraining Defendants from continuing the unfair and unlawful business practices set for above, and the requiring the establishment of appropriate and effective policies, procedures, and practices in place to prevent future violations of the aforementioned California laws;

10.    For declaratory relief;

11.    For pre-judgment and post-judgment interest on each of the foregoing at the legal rate from the date the obligation became due through the date of judgment on this matter as required by law;

12.    For punitive and exemplary damages on all applicable causes of action in amounts sufficient to punish Defendants for the wrongful conduct alleged herein and to deter such conduct in the future;

13.    For an award to Plaintiffs of their reasonable costs of suit, attorneys' fees, and expert witness fees under all applicable statutory or contractual basis; and

14.    For such other and further relief as this Court may deem just and proper.


Dated: June 12, 2024                        Respectfully submitted,


                                            */s/ Anne B. Shaver*
                                            Anne B. Shaver (SBN 255928)
                                            LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                            275 Battery Street, 29th Floor
                                            San Francisco, CA 94111-3339
                                            Phone: (415) 956-1000
                                            Fax: (415) 956-1008
                                            ashaver@lchb.com

                                            Laurie M. Burgess (SBN 302270)
                                            BURGESS LAW OFFICES, P.C.
                                            498 Utah Street
                                            San Francisco, CA 94110
                                            Phone: (312) 320-1718
                                            lburgess@burgess-laborlaw.com

                                            *Counsel for Plaintiffs*

COMPLAINT

# Exhibit A

An open letter to the Executives of SpaceX,

In light of recent allegations against our CEO and his public disparagement of the situation, we would like to deliver feedback on how these events affect our company's reputation, and through it, our mission. Employees across the spectra of gender, ethnicity, seniority, and technical roles have collaborated on this letter. We feel it is imperative to maintain honest and open dialogue with each other to effectively reach our company's primary goals together: making SpaceX a great place to work for all, and making humans a multiplanetary species.

As SpaceX employees we are expected to challenge established processes, rapidly innovate to solve complex problems as a team, and use failures as learning opportunities. Commitment to these ideals is fundamental to our identity and is core to how we have redefined our industry. But for all our technical achievements, SpaceX fails to apply these principles to the promotion of diversity, equity, and inclusion with equal priority across the company, resulting in a workplace culture that remains firmly rooted in the status quo.

Individuals and groups of employees at SpaceX have spent significant effort beyond their technical scope to make the company a more inclusive space via conference recruiting, open forums, feedback to leadership, outreach, and more. However, we feel an unequal burden to carry this effort as the company has not applied appropriate urgency and resources to the problem in a manner consistent with our approach to critical path technical projects. To be clear: recent events are not isolated incidents; they are emblematic of a wider culture that underserves many of the people who enable SpaceX's extraordinary accomplishments. As industry leaders, we bear unique responsibility to address this.

Elon's behavior in the public sphere is a frequent source of distraction and embarrassment for us, particularly in recent weeks. As our CEO and most prominent spokesperson, Elon is seen as the face of SpaceX—every Tweet that Elon sends is a de facto public statement by the company.  It is critical to make clear to our teams and to our potential talent pool that his messaging does not reflect our work, our mission, or our values.

SpaceX's current systems and culture do not live up to its stated values, as many employees continue to experience unequal enforcement of our oft-repeated "No Asshole" and "Zero Tolerance" policies. This must change. As a starting point, we are putting forth the following categories of action items, the specifics of which we would like to discuss in person with the executive team within a month:

**Publicly address and condemn Elon's harmful Twitter behavior.** SpaceX must swiftly and explicitly separate itself from Elon's personal brand.

**Hold all leadership equally accountable to making SpaceX a great place to work for everyone.** Apply a critical eye to issues that prevent employees from fully performing their jobs and meeting their potential, pursuing specific and enduring actions that are well resourced, transparent, and treated with the same rigor and urgency as establishing flight rationale after a hardware anomaly.

**Define and uniformly respond to all forms of unacceptable behavior.** Clearly define what exactly is intended by SpaceX's "No Asshole" and "Zero Tolerance" policies and enforce them consistently. SpaceX must establish safe avenues for reporting and uphold clear repercussions for all unacceptable behavior, whether from the CEO or an employee starting their first day.

We care deeply about SpaceX's mission to make humanity multiplanetary. But more importantly, we care about each other. The collaboration we need to make life multiplanetary is incompatible with a culture that treats employees as consumable resources. Our unique position requires us to consider how our actions today will shape the experiences of individuals beyond our planet. Is the culture we are fostering now the one which we aim to bring to Mars and beyond?

We have made strides in that direction, but there is so much more to accomplish.

# Proposed Action Items

**Publicly address and condemn Elon's harmful Twitter behavior.** SpaceX must swiftly and explicitly separate itself from Elon's personal brand.

- Publicly state that Elon's Twitter behavior is not in line with SpaceX values.
- Expand the company's official social media presence to provide a professional and coherent public image of the company completely separate from Elon's online presence.
- Cease retweeting or directly linking to Elon's personal social media posts on any official SpaceX channels.

**Hold all leadership equally accountable to making SpaceX a great place to work for everyone.** Apply a critical eye to issues that prevent employees from fully performing their jobs and meeting their potential, pursuing specific and enduring actions that are well resourced, transparent, and treated with the same rigor and urgency as establishing flight rationale after a hardware anomaly.

- Institute an executive-level position, distinctly independent from Human Resources, responsible for ensuring that SpaceX is a great place to work for all individuals.
- Create direct channels for employee feedback to this new executive on the state of SpaceX culture across all departments to hold ourselves accountable for making progress towards this goal.
- Document workplace culture progress by regularly reporting data on employee hiring, promotion, and attrition disaggregated by experience, performance, and background.

**Define and uniformly respond to all forms of unacceptable behavior.** Clearly define what exactly is intended by SpaceX's "No Asshole" and "Zero Tolerance" policies and enforce them consistently. SpaceX must establish safe avenues for reporting and uphold clear repercussions for all unacceptable behavior, whether from the CEO or an employee starting their first day.

- Update the Employee Handbook and enforce annual in-person participation in comprehensive Diversity, Inclusion, and Misconduct training to ensure all employees adhere to these guidelines. Leadership candidates should be evaluated on these criteria.
- Commit to a consistent and transparent process for responses to all substantiated claims of misconduct, regardless of the alleged perpetrator.
- Document the efficacy of these policies by regularly reporting aggregate data on unacceptable behavior claims, involved party outcomes, and disciplinary actions.

To provide feedback on the above action items, fill out this survey or scan the QR code below.



https://s.surveyplanet.com/h409awcp

# Unwelcome behavior on Elon's Twitter

This document is a compilation of various examples of problematic Twitter posts by Elon, including "unwelcome behavior", "subtle sexual harassment", "sexual harassment"[1], and bullying directed at individuals and various marginalized groups via his Twitter posts. It also includes examples of excessively vulgar and sexual content that is inappropriate at our workplace. Most of these tweets have been posted within the last two years (March 2020 - June 2022). The purpose of this document is to warn coworkers of the resulting harm to our work culture, harm to marginalized employees, and our impaired ability as a community of space enthusiasts to do the amazing work which we're all here for.

The tweets selected for this document were chosen because they most clearly depict the "Bro culture" Elon seems to not only tolerate, but embrace and encourage online and in his personal life. The effects of these tweets, however, are not just limited to public perception of Elon's character. Elon's Twitter account is routinely used to announce SpaceX company news, is referenced in page 23 of the SpaceX employee handbook as a source of company news, and is documented as an official source of company information (source) in various SEC filings made by Tesla (example). For these and other reasons, statements made by Elon on Twitter either directly speak for SpaceX or indirectly reflect on our company's culture and those who work here. Various examples support this claim, from personal accounts of families and friends reaching out to employees asking if they agree with what Elon says to news articles and essays written about the type of work culture being promoted at SpaceX in light of statements made by Elon online[2]. And in the absence of SpaceX saying otherwise, there's no reason for anyone to believe that the behavior repeatedly and consistently demonstrated by Elon in public, in spaces used for official company announcements, is not acceptable at SpaceX.

The content that Elon creates and promotes demonstrates tolerance, and even encouragement, of a workplace culture that is hostile to various marginalized and underrepresented groups. By mocking federally protected characteristics (including sex, sexual orientation, age, and race/religion), trivializing serious and traumatic challenges faced by those marginalized, and silencing attempts at raising legitimate concerns about our workplace culture by dismissing them as politically motivated attacks, Elon has set a very concerning example for what is acceptable and tolerated at SpaceX.

**By staying silent on his public actions, taken on a platform which is considered official company communication, SpaceX and its executives have affirmed that Elon's behavior is acceptable at our company.**

Please note that for each example screenshotted, a link is provided to the official source so that the full context can be examined. The vast majority of Tweets are still live on Elon's account, but

---

[1] Such language, defined on this PDF published by the United Nations, often leads to a "hostile work environment".
[2] Examples of articles are included with various tweets throughout this document.

some which have been deleted are also included because they are relevant in establishing the ongoing pattern of harassment and/or bullying that started years ago and continues to this day.

Table of contents

**Tweets targeting or affecting an individual**                            **3**

    If you touch my wiener                                                4
    Describe me while exposed                                            5
    Stop hitting on me                                                   6
    In case you need to lose a boner                                     7
    I keep forgetting you're still alive                                 8
    Looks like you just came                                             9
    Can't get it up (to orbit)                                          10
    You're an idiot                                                     11

**Tweets targeting or affecting a group**                                  **12**

    Here it comes                                                       13
    Politically motivated                                               14
    Mansplaining                                                        15
    Comparison to Hitler                                                16
    TITS                                                                17
    Pronouns are oppression                                             18
    Catgirl robots                                                      19
    Pronouns suck                                                       20
    Sperm Donor Clinic                                                  21
    Elongate                                                            22

**Other Tweets promoting an unwelcome and potentially hostile environment**  **23**

    Macrohard                                                           24
    Erotic Democracy                                                    25
    Deep thots                                                          26
    Our crane                                                           27
    Weekend meme juice                                                  28
    Huge cock                                                           29

**Emails**                                                                 **30**

    Tesla do the right thing                                            31

Tweets targeting or affecting an individual

If you touch my wiener



**Status**: online
**Link**: https://twitter.com/elonmusk/status/1527757119239380993

## Describe me while exposed



**Status**: online
**Link**: https://twitter.com/elonmusk/status/1527505449905528846
**Context**: Elon presumably challenging the accuser to describe his genetalia, after the Sexual Harassment allegation at SpaceX reported by Insider on May 19th, 2022.

Stop hitting on me



2:27 PM · Apr 29, 2022 · Twitter for iPhone

**52.1K** Retweets    **10.6K** Quote Tweets    **515.4K** Likes

**Status**: online
**Link**: https://twitter.com/elonmusk/status/1520152887090892800

In case you need to lose a boner

 **Elon Musk** ✓
@elonmusk                                    ...

**in case u need to lose a boner fast**



8:30 PM · Apr 22, 2022 · Twitter for iPhone

**142.6K** Retweets    **31.3K** Quote Tweets    **1.4M** Likes

**Status**: online
**Link**: https://twitter.com/elonmusk/status/1517707521343082496
**Article**:
https://nypost.com/2022/06/06/elon-musk-posts-vulgar-tweet-about-bill-gates-during-fued/

I keep forgetting you're still alive



**Status**: online
**Link**: https://twitter.com/elonmusk/status/1459891238384115722
**Articles**:
- https://www.cnn.com/2021/11/14/business/elon-musk-bernie-sanders-tweet/index.html
- https://www.independent.co.uk/news/world/americas/us-politics/elon-musk-bernie-sanders-twitter-b1957625.html

Looks like you just came



**Status**: online
**Link**: https://twitter.com/elonmusk/status/1457497438474981384
**Article**: https://sports.yahoo.com/elon-musk-made-gross-sex-130902137.html

Can't get it up (to orbit)



**Kenneth Chang** @kchangnyt · Apr 26, 2021    ···
SCOOP: Jeff Bezos' Blue Origin files a protest against NASA's awarding of the lunar lander contract to Elon Musk's SpaceX.



nytimes.com
Jeff Bezos' Rocket Company Challenges NASA Over SpaceX Moon La…
The space agency picked Elon Musk's company over two other bidders to take its astronauts back to the lunar surface.

♡ 447        ⟲ 832        ♡ 5,199        ⬆️



**Elon Musk** ✔️
@elonmusk                                          ···

Replying to @kchangnyt

# Can't get it up (to orbit) lol

4:31 PM · Apr 26, 2021 · Twitter for iPhone

**4,775** Retweets    **1,363** Quote Tweets    **49.2K** Likes

**Status**: online
**Link**: https://twitter.com/elonmusk/status/1386825367948644352

Page 10 of 31

You're an idiot



**Status**: online
**Link**: https://twitter.com/elonmusk/status/941500121564332032
**Link**: https://twitter.com/elonmusk/status/941551760799277056
**Context**: A tweet from Jarrett Walker, a public transit planning and policy consultant, criticizing him for championing individual, over public, transport.
**Article**:
https://www.theguardian.com/cities/2017/dec/21/elon-musk-public-transport-transit-painful-twitter

Tweets targeting or affecting a group

Here it comes



7:44 AM · May 31, 2022 · Twitter for iPhone

147K Retweets   23.1K Quote Tweets   1.4M Likes

**Status**: online
**Link**: https://twitter.com/elonmusk/status/153164784959057921

Later followed by this tweet:



9:05 AM · Jun 1, 2022 · Twitter for iPhone

4,426 Retweets   534 Quote Tweets   69.3K Likes

**Link**: https://twitter.com/elonmusk/status/153203055478087424

Note the original "here it comes" tweet is still up. An apology, if this is what it is, means nothing if behavior is not corrected.

## Politically motivated



**Status**: online
**Link**: https://twitter.com/elonmusk/status/1527491436005957633
**Context**: the Sexual Harassment allegation at SpaceX reported by Insider on May 19th, 2022

Mansplaining



**Status**: online
**Link**: https://twitter.com/elonmusk/status/1527344969471520768

## Comparison to Hitler





**Status**: deleted
**Context**: In response to [a tweet](#) linking the coinbase article about Trudeau blocking crypto donations to Canadian Trucker protesters.
**Article**:
https://www.theguardian.com/technology/2022/feb/17/elon-musk-criticised-for-comparing-justin-trudeau-to-adolf-hitler-tweet-auschwitz

# TITS



**Status**: partially deleted
**Link**: https://twitter.com/elonmusk/status/1453954994546229253
**Article**: https://mashable.com/article/elon-musk-sexist-joke-tweets

## Pronouns are oppression



**Status**: online
https://twitter.com/elonmusk/status/1338365886542049282
**Article**:
https://cleantechnica.com/2020/12/16/real-friends-interrupt-you-when-you-are-making-a-mistake/

<u>In response to the above article:</u>



**Status**: online
**Link**: https://twitter.com/elonmusk/status/1339253909546823682

Catgirl robots



**Status**: online
**Link**: https://twitter.com/elonmusk/status/1321605428963233794

Pronouns suck



**Status**: online
https://twitter.com/elonmusk/status/1286869404874088448
**Article**:
https://www.forbes.com/sites/sethcohen/2020/07/25/tesla-founder-elon-musk-uses-twitter-to-mock-transgender-inclusion/?sh=11f2b1e1647f

## Sperm Donor Clinic



**Status**: online
**Link**: https://twitter.com/elonmusk/status/1321275062998257665

Later in the thread, he replied:



## Elongate



10:43 PM · May 19, 2022 · Twitter for iPhone

**28.1K** Retweets    **3,922** Quote Tweets    **293K** Likes

**Status**: online
**Link**: https://twitter.com/elonmusk/status/1527525498460508160
**Context**: the Sexual Harassment allegation at SpaceX reported by Insider on May 19th, 2022

Other Tweets promoting an unwelcome and potentially hostile environment

## Macrohard



## Naughtius Maximus



youtube.com
Biggus Dickus - Monty Python, Life of Brian.
Just one of many brilliant scenes from the epic comedy "Life of Brian" by Monty Python.PS: Subtitles is the originals from the blu-ray.PS 2: Yes, we know abo...

1:02 AM · Oct 25, 2021 · Twitter for iPhone

**952** Retweets    **145** Quote Tweets    **19.6K** Likes

**Status**: online
**Link**: https://twitter.com/elonmusk/status/1452546064591040513

## Erotic Democracy



**Elon Musk** ✔
@elonmusk

erotic democracy >> sclerotic democracy

6:08 PM · Oct 24, 2021 · Twitter for iPhone

**4,158** Retweets    **499** Quote Tweets    **63.4K** Likes

**Status**: online
**Link**: https://twitter.com/elonmusk/status/1452442007784263682

Deep thots



**Status**: online
**Link**: https://twitter.com/elonmusk/status/1397625459437826049

## Our crane



**Status**: online
**Link**: https://twitter.com/elonmusk/status/1375652425814704128

Weekend meme juice



**Status**: online
**Link**: https://twitter.com/elonmusk/status/1360592735409946625

Huge cock





7:25 AM · Dec 14, 2020 · Twitter for iPhone

**12.8K** Retweets    **4,685** Quote Tweets    **72.4K** Likes

**Status**: online
**Link**: https://twitter.com/elonmusk/status/1338505515719143425

Emails

## Tesla do the right thing

**Elon Musk**
Doing the right thing
To: Everybody

Inbox - Exchange    May 31, 2017 at 2:37 AM

About four years ago, I sent out an email describing some of the core principles of Tesla. Since then, we have grown from 4,500 people to 33,000, so the vast majority of the company has never received this note. We are redoing the first day orientation and Tesla handbook to more clearly capture and emphasize these points, but I thought I should send this out in advance.

In my email below, please pay particular attention to the first point on the list. Tesla has to be hardcore and demanding, not for the hell of it, but because we are fighting for a good cause against giant, entrenched competitors who just want the status quo to continue. The list of companies that want to kill Tesla is to be part of a team that is fired up to achieve what most industry experts say is impossible! For many the only way for a little company to prevail against those much larger companies is to work faster, smarter and harder. The passing grade at Tesla is excellence, because it has to be.

However, this does not give license to anyone to be a jerk. It is incredibly important that people look forward to coming to work in the morning. One of the best feelings in the world is to be part of a team that is fired up to achieve what most industry experts say is impossible! For many companies out there, work is like jail – employees look forward to Friday and dread Monday. That's horrible. We never want to be like that.

Part of not being a huge jerk is considering how someone might feel who is part of an historically less represented group. They have endured difficulties that someone born or raised in a more privileged situation did not. This doesn't mean that there is a different standard of performance or that you can't give critical feedback. You should – doing anything else would be an insult to the hard work it took to get there – but don't ever intentionally allow someone to feel excluded, uncomfortable or unfairly treated. Sometimes these things happen unintentionally, in which case you should apologize.

In fairness, if someone is a jerk to you, but sincerely apologizes, it is important to be thick-skinned and accept that apology. If you are part of a less represented group, you don't get a free pass on being a jerk yourself. We have had a few cases at Tesla where someone in a less represented group was actually given a job or promoted over more qualified highly represented candidates and then decided to sue Tesla for millions of dollars because they felt they weren't promoted enough. That is obviously not cool.

What it comes down to is this: do what would make your parents proud. If you can't look someone you respect in the eye and explain what you did, don't do it.

Thanks,
Elon

**Link**: https://www.tesla.com/blog/hotbed-misinformation
**Article**:
https://money.cnn.com/2017/11/15/technology/elon-musk-tesla-racial-discrimination/index.html

Excerpt from email:

> In fairness, if someone is a jerk to you, but sincerely apologizes, it is important to be thick-skinned and accept that apology. If you are part of a less represented group, you don't get a free pass on being a jerk yourself. We have had a few cases at Tesla where someone in a less represented group was actually given a job or promoted over more qualified highly represented candidates and then decided to sue Tesla for millions of dollars because they felt they weren't promoted enough. That is obviously not cool.

Commentary:

It seems like the *real* problem at Tesla (and SpaceX) is not the lack of diversity, but rather a plethora of maliciously acting diverse employees who are suing Tesla and not forgiving jerks when they apologize. These diverse employees are also getting a free pass to be jerks to the white male population.

Page 31 of 31

CM-010

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>Anne B. Shaver (SBN 255928), Lieff Cabraser Heimann & Bernstein, LLP, 275 Battery St., 29th Floor, San Francisco, CA 94111/ Laurie Burgess (SBN 302270), 498 Utah Street, San Francisco, CA 94110<br>TELEPHONE NO.: 415-956-1000    FAX NO.: 415-956-1008<br>EMAIL ADDRESS: ashaver@lchb.com / lburgess@burgess-laborlaw.com<br>ATTORNEY FOR *(Name):* Paige Holland-Thielen et. al. | **FOR COURT USE ONLY**<br><br>Electronically FILED by<br>Superior Court of California,<br>County of Los Angeles<br>6/12/2024 1:44 PM<br>David W. Slayton,<br>Executive Officer/Clerk of Court,<br>By C. Cervantes, Deputy Clerk |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
STREET ADDRESS: 111 North Hill St.
MAILING ADDRESS: 111 North Hill St.
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME:
Holland-Thielen et. al. v. Space Exploration Technologies Corp. & Elon Musk

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | CASE NUMBER: |
|---|---|---|
| [x] Unlimited (Amount demanded exceeds $35,000)   [ ] Limited (Amount demanded is $35,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | 24STCV14693 |
| | | JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[x] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [x] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [x] monetary b. [x] nonmonetary; declaratory or injunctive relief c. [x] punitive
4. Number of causes of action *(specify):* 7
5. This case [ ] is [x] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: June 12, 2024
Anne B. Shaver
_____
(TYPE OR PRINT NAME)         ▶ _____ (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. January 1, 2024]
   **CIVIL CASE COVER SHEET**   
Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courts.ca.gov

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**                                       CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property
Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*
**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice– Physicians & Surgeons
Other Professional Health Care Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
Intentional Infliction of Emotional Distress
Negligent Infliction of Emotional Distress
Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/ Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute
**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court Case Matter
Writ–Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic relations)*
Sister State Judgment
Administrative Agency Award *(not unpaid taxes)*
Petition/Certification of Entry of Judgment on Unpaid Taxes
Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-harassment)*
Mechanics Lien
Other Commercial Complaint Case *(non-tort/non-complex)*
Other Civil Complaint *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late Claim
Other Civil Petition

| SHORT TITLE | CASE NUMBER |
|---|---|
| Holland-Thielen et. al. v. Space Exploration Technologies Corp. | 24STCV14693 |

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION

### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

> **This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Courthouse Location (Column C) | |
|---|---|
| 1. Class Actions must be filed in the Stanley Mosk Courthouse, Central District. | 7. Location where petitioner resides. |
| 2. Permissive filing in Central District. | 8. Location wherein defendant/respondent functions wholly. |
| 3. Location where cause of action arose. | 9. Location where one or more of the parties reside. |
| 4. Location where bodily injury, death or damage occurred. | 10. Location of Labor Commissioner Office. |
| 5. Location where performance required, or defendant resides. | 11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection). |
| 6. Location of property or permanently garaged vehicle. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ 2201 Motor Vehicle – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | Uninsured Motorist (46) | ☐ 4601 Uninsured Motorist – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| **Other Personal Injury/ Property Damage/ Wrongful Death** | Other Personal Injury/ Property Damage/ Wrongful Death (23) | ☐ 2301 Premise Liability (e.g., dangerous conditions of property, slip/trip and fall, dog attack, etc.) | 1, 4 |
| | | ☐ 2302 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, battery, vandalism, etc.) | 1, 4 |
| | | ☐ 2303 Intentional Infliction of Emotional Distress | 1, 4 |
| | | ☐ 2304 Other Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | | ☐ 2305 Elder/Dependent Adult Abuse/Claims Against Skilled Nursing Facility | 1, 4 |
| | | ☐ 2306 Intentional Conduct – Sexual Abuse Case (in any form) | 1, 4 |

| SHORT TITLE | CASE NUMBER |
|---|---|
| Holland-Thielen et. al. v. Space Exploration Technologies Corp. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Other Personal Injury/ Property Damage/ Wrongful Death** | | ☐ 2307 Construction Accidents | 1, 4 |
| | | ☐ 2308 Landlord – Tenant Habitability (e.g., bed bugs, mold, etc.) | 1, 4 |
| | Product Liability (24) | ☐ 2401 Product Liability (not asbestos or toxic/ environmental) | 1, 4 |
| | | ☐ 2402 Product Liability – Song-Beverly Consumer Warranty Act (CA Civil Code §§1790-1795.8) (Lemon Law) | 1, 3, 5 |
| | Medical Malpractice (45) | ☐ 4501 Medical Malpractice – Physicians & Surgeons | 1, 4 |
| | | ☐ 4502 Other Professional Health Care Malpractice | 1, 4 |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ 0701 Other Commercial/Business Tort (not fraud or breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ 0801 Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ 1301 Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ 1601 Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ 2501 Legal Malpractice | 1, 2, 3 |
| | | ☐ 2502 Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ 3501 Other Non-Personal Injury/Property Damage Tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☑ 3601 Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ 1501 Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ 1502 Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract / Warranty (06) (not insurance) | ☐ 0601 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ 0602 Contract/Warranty Breach – Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ 0603 Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ 0604 Other Breach of Contract/Warranty (no fraud/ negligence) | 1, 2, 5 |
| | | ☐ 0605 Breach of Rental/Lease Contract (COVID-19 Rental Debt) | 2, 5 |
| | Collections (09) | ☐ 0901 Collections Case – Seller Plaintiff | 5, 6, 11 |
| | | ☐ 0902 Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ 0903 Collections Case – Purchased Debt (charged off consumer debt purchased on or after January 1, 2014) | 5, 6, 11 |
| | | ☐ 0904 Collections Case – COVID-19 Rental Debt | 5, 11 |
| | Insurance Coverage (18) | ☐ 1801 Insurance Coverage (not complex) | 1, 2, 5, 8 |

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

| SHORT TITLE | CASE NUMBER |
|---|---|
| Holland-Thielen et. al. v. Space Exploration Technologies Corp. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Contract** (Continued) | Other Contract (37) | ☐ 3701 Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ 3702 Tortious Interference | 1, 2, 3, 5 |
| | | ☐ 3703 Other Contract Dispute (not breach/insurance/fraud/ negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/ Inverse Condemnation (14) | ☐ 1401 Eminent Domain/Condemnation<br><br>Number of Parcels _____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ 3301 Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ 2601 Mortgage Foreclosure | 2, 6 |
| | | ☐ 2602 Quiet Title | 2, 6 |
| | | ☐ 2603 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer – Commercial (31) | ☐ 3101 Unlawful Detainer – Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Residential (32) | ☐ 3201 Unlawful Detainer – Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Post Foreclosure (34) | ☐ 3401 Unlawful Detainer – Post Foreclosure | 2, 6, 11 |
| | Unlawful Detainer – Drugs (38) | ☐ 3801 Unlawful Detainer – Drugs | 2, 6, 11 |
| **Judicial Review** | Asset Forfeiture (05) | ☐ 0501 Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ 1101 Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ 0201 Writ – Administrative Mandamus | 2, 8 |
| | | ☐ 0202 Writ – Mandamus on Limited Court Case Matter | 2 |
| | | ☐ 0203 Writ – Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ 3901 Other Writ/Judicial Review | 2, 8 |
| | | ☐ 3902 Administrative Hearing | 2, 8 |
| | | ☐ 3903 Parking Appeal | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ 0301 Antitrust/Trade Regulation | 1, 2, 8 |
| | Asbestos (04) | ☐ 0401 Asbestos Property Damage | 1, 11 |
| | | ☐ 0402 Asbestos Personal Injury/Wrongful Death | 1, 11 |

LASC CIV 109 Rev. 01/23

For Mandatory Use

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

LASC Local Rule 2.3

| SHORT TITLE | CASE NUMBER |
|---|---|
| Holland-Thielen et. al. v. Space Exploration Technologies Corp. | |

| | A<br>Civil Case Cover<br>Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable<br>Reasons (see<br>Step 3 above) |
|---|---|---|---|
| **Provisionally Complex Litigation** (Continued) | Construction Defect (10) | ☐ 1001 Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ 4001 Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ 2801 Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ 3001 Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ 4101 Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ 2001 Sister State Judgment | 2, 5, 11 |
| | | ☐ 2002 Abstract of Judgment | 2, 6 |
| | | ☐ 2004 Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ 2005 Petition/Certificate for Entry of Judgment Unpaid Tax | 2, 8 |
| | | ☐ 2006 Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ 2701 Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (not specified above) (42) | ☐ 4201 Declaratory Relief Only | 1, 2, 8 |
| | | ☐ 4202 Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ 4203 Other Commercial Complaint Case (non-tort/noncomplex) | 1, 2, 8 |
| | | ☐ 4204 Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ 2101 Partnership and Corporation Governance Case | 2, 8 |
| | Other Petitions (not specified above) (43) | ☐ 4301 Civil Harassment with Damages | 2, 3, 9 |
| | | ☐ 4302 Workplace Harassment with Damages | 2, 3, 9 |
| | | ☐ 4303 Elder/Dependent Adult Abuse Case with Damages | 2, 3, 9 |
| | | ☐ 4304 Election Contest | 2 |
| | | ☐ 4305 Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ 4306 Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ 4307 Other Civil Petition | 2, 9 |

| SHORT TITLE | CASE NUMBER |
|---|---|
| Holland-Thielen et. al. v. Space Exploration Technologies Corp. | |

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address, which is the basis for the filing location including zip code. (No address required for class action cases.)

| REASON:<br>☐ 1. ☐ 2. ☑ 3. ☐ 4. ☑ 5. ☐ 6. ☐ 7. ☐ 8. ☑ 9. ☐ 10. ☐ 11 | ADDRESS:<br>375 E. 2nd St. |
|---|---|
| CITY:<br>Los Angeles | STATE:<br>CA | ZIP CODE:<br>90012 | |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the ___Central___ District of the Superior Court of California, County of Los Angeles [Code of Civ. Proc., 392 et seq., and LASC Local Rule 2.3(a)(1)(E)]

Dated: 06/12/2024

*AmBShaver*

(SIGNATURE OF ATTORNEY/FILING PARTY

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.
2. If filing a Complaint, a completed Summons form for issuance by the Clerk.
3. Civil Case Cover Sheet Judicial Council form CM-010.
4. Civil Case Cover Sheet Addendum and Statement of Location form LASC CIV 109 (01/23).
5. Payment in full of the filing fee, unless there is a court order for waiver, partial or schedule payments.
6. A signed order appointing a Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court to issue a Summons.
7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the Summons and Complaint, or other initiating pleading in the case.

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>06/12/2024<br>David W. Slayton, Executive Officer / Clerk of Court<br>By: _____ C. Cervantes _____ Deputy |
| **NOTICE OF CASE ASSIGNMENT**<br><br>**UNLIMITED CIVIL CASE** | |
| **Your case is assigned for all purposes to the judicial officer indicated below.** | CASE NUMBER:<br>24STCV14693 |

<u>**THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT**</u>

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✔ | Mel Red  Recana | 45 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on  06/12/2024
   (Date)

David W. Slayton, Executive Officer / Clerk of Court

By C. Cervantes _____ , Deputy Clerk

LACIV 190 (Rev 6/18)
LASC Approved 05/06

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007.  They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date.  All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference.  These matters may be heard and resolved at this conference.  At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status.  If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**



# Superior Court of California, County of Los Angeles

---

## ALTERNATIVE DISPUTE RESOLUTION (ADR)
## INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

---

<u>**What is ADR?**</u>
ADR helps people find solutions to their legal disputes without going to trial.  The main types of ADR are negotiation, mediation, arbitration, and settlement conferences.  When ADR is done by phone, videoconference or computer, it may be called Online Dispute Resolution (ODR).  These alternatives to litigation and trial are described below.

<u>**Advantages of ADR**</u>
- **Saves Time:**  ADR is faster than going to trial.
- **Saves Money:**  Parties can save on court costs, attorney's fees, and witness fees.
- **Keeps Control** (with the parties):  Parties choose their ADR process and provider for voluntary ADR.
- **Reduces Stress/Protects Privacy:**  ADR is done outside the courtroom, in private offices, by phone or online.

<u>**Disadvantages of ADR**</u>
- **Costs:**  If the parties do not resolve their dispute, they may have to pay for ADR, litigation, and trial.
- **No Public Trial:**  ADR does not provide a public trial or decision by a judge or jury.

<u>**Main Types of ADR**</u>
1. **Negotiation:**  Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial.  If the parties have lawyers, they will negotiate for their clients.

2. **Mediation:**  In mediation, a neutral mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all.  Mediators do not decide the outcome.  Parties may go to trial if they decide not to settle.

       **Mediation may be appropriate when the parties**
- want to work out a solution but need help from a neutral person.
- have communication problems or strong emotions that interfere with resolution.

       **Mediation may <u>not</u> be appropriate when the parties**
- want a public trial and want a judge or jury to decide the outcome.
- lack equal bargaining power or have a history of physical/emotional abuse.

## How to Arrange Mediation in Los Angeles County

Mediation for **civil cases** is voluntary and parties may select any mediator they wish.  Options include:

a. **The Civil Mediation Vendor Resource List**
   If all parties in an active civil case agree to mediation, they may contact these organizations to request a "Resource List Mediation" for mediation at reduced cost or no cost (for selected cases).

   - **ADR Services, Inc.** Assistant Case Manager Janet Solis, janet@adrservices.com (213) 683-1600
   - **Mediation Center of Los Angeles** Program Manager info@mediationLA.org (833) 476-9145

   **These organizations cannot accept every case and they may decline cases at their discretion.** They may offer online mediation by video conference for cases they accept.  Before contacting these organizations, review important information and FAQs at www.lacourt.org/ADR.Res.List

   **NOTE:  The Civil Mediation Vendor Resource List program does not accept family law, probate, or small claims cases.**

b. **Los Angeles County Dispute Resolution Programs.**  Los Angeles County-funded agencies provide mediation services on the day of hearings in small claims, unlawful detainer (eviction), civil harassment, and limited civil (collections and non-collection) cases. https://dcba.lacounty.gov/countywidedrp/

   **Online Dispute Resolution (ODR).**  Parties in small claims and unlawful detainer (eviction) cases should carefully review the Notice and other information they may receive about (ODR) requirements for their case.  https://my.lacourt.org/odr/

c. Mediators and ADR and Bar organizations that provide mediation may be found on the internet.

3. **Arbitration:**  Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome.  In "binding" arbitration, the arbitrator's decision is final; there is no right to trial.  In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision.  For more information about arbitration, visit https://www.courts.ca.gov/programs-adr.htm

4. **Mandatory Settlement Conferences (MSC):**  MSCs are ordered by the Court and are often held close to the trial date or on the day of trial.  The parties and their attorneys meet with a judge or settlement officer who does not make a decision but who instead assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement.  For information about the Court's MSC programs for civil cases, visit https://www.lacourt.org/division/civil/CI0047.aspx

Los Angeles Superior Court ADR website:  https://www.lacourt.org/division/civil/CI0109.aspx
For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm

POS-015

| | | |
|---|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY:** | STATE BAR NO: 255928 | **FOR COURT USE ONLY** |

NAME: Anne B. Shaver
FIRM NAME: Lieff Cabraser Heimann & Bernstein, LLP
STREET ADDRESS: 275 Battery Street, Floor 29
CITY: San Francisco          STATE: CA      ZIP CODE: 94111
TELEPHONE NO.: (415) 956-1000      FAX NO.: (415) 956-1008
E-MAIL ADDRESS: ashaver@lchb.com
ATTORNEY FOR (Name): Plaintiffs Paige Holland-Thielen, et al.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Los Angeles
STREET ADDRESS:  111 North Hill Street
MAILING ADDRESS:  111 North Hill Street
CITY AND ZIP CODE:   Los Angeles, 90012
BRANCH NAME: Stanley Mosk Courthouse

Plaintiff/Petitioner:  Paige Holland-Thielen, et al.

Defendant/Respondent:  Space Exploration Technologies Corp. and Elon Musk

| **NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL** | CASE NUMBER:<br>24STCV14693 |
|---|---|

TO *(insert name of party being served):* Space Exploration Technologies Corp.

---

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

---

Date of mailing:  June 27, 2024

| Elizabeth Keenley | ▶ | /s/ Elizabeth Keenley |
|---|---|---|
| (TYPE OR PRINT NAME) | | (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE) |

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing):*

1. [ x ]  A copy of the summons and of the complaint.
2. [ x ]  Other *(specify):*

    Civil Case Cover Sheet, Notice of Case Assignment, & ADR Packet

*(To be completed by recipient):*

Date this form is signed:  July 22, 2024

Jennifer B. Zargarof of Morgan, Lewis & Bockius LLP
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)
attorneys for Space Exploration Technologies Corp.

▶ *(signature)*
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov

# **PPROOF OF SERVICE**

    I am a citizen of the United States and employed in Los Angeles County, California.  I am over the age of eighteen years and not a party to the within entitled action.  My business address is 300 South Grand Avenue, Twenty-Second Floor, Los Angeles, CA  90071-3132.

    On July 22, 2024, I served a copy of the within document(s):

DEFENDANT SPACE EXPLORATION TECHNOLOGIES CORPORATION'S NOTICE AND ACKNOWLEDGEMENT OF RECEIPT - CIVIL

☐    by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, the United States mail at Los Angeles, California addressed as set forth below.

☐    by placing the document(s) listed above in a sealed FedEx envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a FedEx agent for delivery.

☒    by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

Anne B. Shaver
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Tel: (415) 956-1000
ashaver@lchb.com

Laurie M. Burgess
BURGESS LAW OFFICES, P.C.
498 Utah Street
San Francisco, CA  94110
Tel: (312) 320-1718
lburgess@burgess-laborlaw.com

    I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

    Executed on July 22, 2024, at Los Angeles, California.

_____
Kristina Wilcox

DB2/ 48533140.1

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

| NAME, ADDRESS, AND TELEPHONE NUMBER OF ATTORNEY OR PARTY WITHOUT ATTORNEY:<br>Anne B. Shaver<br>Lieff Cabraser Heimann & Bernstein, LLP<br>275 Battery Street, Floor 29<br>San Francisco, CA 94111<br>Tel. (415) 956-1000<br>ATTORNEY FOR (Name): Plaintiffs Paige Holland-Thielen, et al. | STATE BAR NUMBER<br><br>255928 | Reserved for Clerk's File Stamp |
|---|---|---|

### SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:
111 North Hill Street, Los Angeles, CA 90012

PLAINTIFF:
Paige Holland-Thielen, et al.

DEFENDANT:
Space Exploration Technologies Corp. and Elon Musk

| APPLICATION FOR PUBLICATION | CASE NUMBER:<br>24STCV14693 |
|---|---|

Application is hereby made for an order directing service of the above-captioned summons, citation or notice of hearing on defendant, respondent, citee or <u>Defendant Elon Musk</u> by publication of said summons, citation, notice of hearing, or <u> </u>, in the <u>Daily Journal</u>, which newspaper is adjudicated a newspaper of general circulation in California and most likely to give notice to defendant, respondent, or citee because <u>it is frequently used</u> <u>for legal notices and has a specific section for Los Angeles legal notices.</u>

The <u>Complaint</u> complaint or petition, which is for <u>sexual harassment & retaliation</u> was filed herein on <u>June 12, 2024.</u>

A copy of the summons, citation or notice of hearing and the complaint or petition could not be served by any of the following methods for the reason shown:

1. Handing a copy to the person to be served. (Personal service – Code Civ. Proc., § 415.10).

2. Leaving a copy, during usual office hours and in the office of the person to be served, with the person who apparently was in charge and by thereafter mailing copies (by first class mail, postage prepaid) to the person to be served at the place where the copies were left. (Service on a corporation, partnership, association, or public entity - Code Civ. Proc., § 415.20(a)).

3. Leaving a copy at the dwelling house, usual place of abode, or usual place of business of the person to be served in the presence of a competent member of the household or person apparently in charge of his office or place of business, at least 18 years of age, who shall be informed of the general nature of the papers and by thereafter mailing copies (by first class mail, postage prepaid) to the person to be served at the place where the copies were left. (Service on natural person, minor, incompetent, or candidate - Code Civ. Proc., § 415.20(b)).

4. Sending (by first class mail or airmail) a copy to the person to be served, together with two copies of required form of notice and acknowledgement and a return envelope, postage prepaid, addressed to the sender. (Service by mail - Code Civ. Proc., § 415.30).

5. Sending (by registered or certified airmail with return receipt requested) copies to the person to be served. (Service by mail outside the State of California - Code Civ. Proc., § 415.40).

6. Any other method (Code Civ. Proc., §§ 413.10, 413.30).

### APPLICATION FOR PUBLICATION

Code Civ. Proc., § 415.50

| Short Title | Case Number |
|---|---|
| Holland-Thielen et al. v. SpaceX et al. | 24STCV14693 |

State below the reasonable attempts to serve the defendant/respondent/citee. If the service could not be made because the dwelling house, normal place of abode, or the usual place of business of the defendant/respondent/citee is unknown, state below the efforts made to determine these locations. If necessary, attach declarations of search, declarations by investigators, etc., to this declaration.

Defendant Elon Musk is the CEO & Chairman of co-defendant SpaceX. Musk is a celebrity and Plaintiffs' counsel could not ascertain any residence address for him either in the telephone directory or using online searches. Plaintiffs' counsel therefore have attempted service on Defendant Elon Musk at his usual place of business in three separate ways. First, we asked counsel for defendant SpaceX, Morgan Lewis LLP, to provide information as to who would be representing defendant Musk in this action on four separate occassions: June 17, June 24, July 2, and August 1. Morgan Lewis has not provided information about Mr. Musk's representation. (See attached declaration of Anne Shaver.) Second, we sent a process server to Musk's place of business, SpaceX's headquarters in Hawthorne, California. The process server attempted service twice, and both times she was refused entrance by building security. On the first attempt, building security told her that the legal department was not answering the phone and intructed her to return another day. On the second attempt, security told her that they no longer accepted service of legal documents at the company headquarters and refused her entry to the building again. (See attached declaration of Gabriela Melendez.) Third, we served Mr. Musk by mail on July 3, 2024 at his place of business, SpaceX's headquarters, as well as at the address for SpaceX's registered agent, CSC Lawyers Incorporating Service. Priority mail tracking shows that both mailings were received. (See attached declaration of Elizabeth Keenley.) Counsel for SpaceX also notified us that the papers were received. (Shaver Decl., Ex. A.) Mr. Musk has not returned the Notice and Acknowledgment of Receipt, and the 20 day deadline for him to do so has passed. (Shaver Decl.)

Date executed ___August 7, 2024___, at ___Los Angeles___, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

___Anne B. Shaver___
(Print Name of Declarant)

___Anne Shaver___
—7679DA1E251A41A...
(Signature of Declarant)

**IF COMPLAINT OR PETITION IS NOT VERIFIED, THE DECLARATION OF MERITS BELOW MUST ALSO BE COMPLETED:**

___Tom Moline___ states: I am the plaintiff or petitioner in the above-mentioned action. I have fully and fairly stated the facts of said case to ___Anne Shaver___ who is my counsel and I am informed and believe that ___Elon Musk___ is a necessary party to my complaint or petition on file herein, or the complaint or petition correctly states a cause of action against defendant/respondent and is incorporated herein by reference as though fully set out. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date executed ___August 7, 2024___, at ___Los Angeles___, California.

___Tom Moline___
(Print Name of Declarant)

—731EFA5D31624D1...
(Signature of Declarant)

**APPLICATION FOR PUBLICATION**

Code Civ. Proc., § 415.50

MC-030

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Anne B. Shaver, State Bar No. 255928<br>Lieff Cabraser Heimann & Bernstein, LLP<br>275 Battery Street, Floor 29<br>San Francisco, CA 94111 | |

TELEPHONE NO.: 415-956-1000    FAX NO. *(Optional):* 415-956-1008
E-MAIL ADDRESS *(Optional):* ashaver@lchb.com
ATTORNEY FOR *(Name):* Plaintiffs Paige Holland-Thielen, et al.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, 90012
BRANCH NAME: Stanley Mosk Courthouse

PLAINTIFF/PETITIONER: Paige Holland-Thielen, et al.

DEFENDANT/RESPONDENT: Space Exploration Technologies Corp., et ano.

| **DECLARATION** | CASE NUMBER:<br>24STCV14693 |
|---|---|

I, Gabriela Melendez, am a process server. On June 27, 2024 I accepted a job for service of process in the above-captioned case for service on defendant Elon Musk at SpaceX headquarters at 1 Rocket Road, Hawthorne, CA 90250.

On July 1, 2024 at 2:31 PM I attempted service. I was told by a security guard at building security that the legal department wasn't answering the phone and to come back another day. The security guard did not allow me to enter the building to leave the packet with SpaceX reception.

On July 2, 2024 at 12:00 PM I again attempted service. This time a security guard told me that as of April 2024, SpaceX's headquarters no longer accepts service of legal documents, either for the company or for individuals working at the company like Musk. I was not allowed to enter the building to leave the packet with SpaceX reception.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:  8/8/2024

Gabriela Melendez
_____
(TYPE OR PRINT NAME)

_____
(SIGNATURE OF DECLARANT)

☐ Attorney for  ☐ Plaintiff  ☐ Petitioner  ☐ Defendant
☐ Respondent  ☑ Other *(Specify):*
Process Server

NAME, ADDRESS AND TELEPHONE NUMBER OF ATTORNEY / PRO PER

Anne B. Shaver
Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, Floor 29
San Francisco, CA 94111
Tel. (415) 956-1000

Attorney for: Plaintiffs

Reserved for Clerk's File Stamp

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| (Title of Action) | CASE NUMBER: |
|---|---|
| Paige Holland-Thielen, et al. vs. Space Exploration Technologies Corp. & Elon Musk | 24STCV14693 |

**ORDER FOR PUBLICATION OF SUMMONS, CITATION OR NOTICE OF HEARING**

IT IS ORDERED that the service of the summons, citation or notice of hearing in this action be made upon defendant, respondent, or citee  Elon Musk  by publication thereof in  the Daily Journal  a newspaper of general circulation published at  Los Angeles , California, and that said publication be made at least once a week for four successive weeks.

IT IS FURTHER ORDERED that a copy of said summons, citation or notice of hearing and of said complaint or petition in this action be forthwith deposited in the United States Post Office, post-paid, directed to said defendant, respondent, or citee if his address is ascertained before expiration of the mailing, or of the fact that the address was not ascertained must be filed at the expiration of the time prescribed for the publication.

Dated: _____

_____
JUDICIAL OFFICER

MC-030

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Anne B. Shaver, State Bar No. 255928<br>Lieff Cabraser Heimann & Bernstein, LLP<br>275 Battery Street, Floor 29<br>San Francisco, CA 94111 | |

TELEPHONE NO.: 415-956-1000    FAX NO. *(Optional):* 415-956-1008
E-MAIL ADDRESS *(Optional):* ashaver@lchb.com
ATTORNEY FOR *(Name):* Plaintiffs Paige Holland-Thielen, et al.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, 90012
BRANCH NAME: Stanley Mosk Courthouse

PLAINTIFF/PETITIONER: Paige Holland-Thielen, et al.

DEFENDANT/RESPONDENT: Space Exploration Technologies Corp., et ano.

| DECLARATION | CASE NUMBER:<br>24STCV14693 |
|---|---|

I am co-counsel for the Plaintiffs in this action. I have asked counsel for Defendant SpaceX, Morgan Lewis, if they can tell me who is representing Defendant Musk in this action on four separate occasions: by telephone on June 17, by email on June 24, by email on July 2, and by email on August 1. Morgan Lewis has not provided information about Mr. Musk's representation.

I searched for a residential address for Mr. Musk and was unable to locate one either through the telephone directory or any online searches. This is expected for a celebrity.

As set forth in the attached Application and declarations of Gabriela Melendez and Elizabeth Keenley, we attempted personal service at Mr. Musk's place of business, but the process server was denied entrance. We also served by mail on July 3, 2023 at Musk's place of business, as well as his company's registered agent, but Musk has not returned the Notice and Acknowledgment of Receipt, and the 20 day deadline for him to do so has passed. I know that these papers were received because counsel for SpaceX contacted us about them, mistakenly believing that the papers had been sent for SpaceX, and we responded that it was service on Elon Musk. See attached Exhibit A.

This case has already been well-publicized in the press, for example articles in Bloomberg and the New York Times and TV coverage on CNN and NBC. Defendant Musk has posted about this lawsuit on the social media platform, X. In response to other users pasting allegations from the Complaint that specifically refer to him as "Defendant Musk" and tagging Mr. Musk using his X handle, @elonmusk, Mr. Musk responded with laughing emojis, "Amazing," and "Legalize Humor!" See attached Exhibit B. This demonstrates that Mr. Musk is aware of the Complaint and is apparently attempting to evade service. Publication notice is a formality that needs to occur so the lawsuit can proceed. Plaintiffs will seek associated costs from Mr. Musk.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

| Anne B. Shaver<br>(TYPE OR PRINT NAME) | *(signature)*<br>(SIGNATURE OF DECLARANT) |
|---|---|

☑ Attorney for  ☑ Plaintiff  ☐ Petitioner  ☐ Defendant
☐ Respondent  ☐ Other *(Specify):*

# EXHIBIT A

| | |
|---|---|
| **From:** | Shaver, Anne B. |
| **To:** | "Cho, Karen Y."; Keenley, Elizabeth; Zargarof, Jennifer B. |
| **Cc:** | "l burgess" |
| **Subject:** | RE: [EXT] RE: Holland-Thielen, et al. v. SpaceX, et ano., No. 24STCV14693 (Cal. Super. Ct. L.A. Cnty.) |
| **Date:** | Friday, July 19, 2024 8:59:18 AM |
| **Attachments:** | 2024.6.10_Abdulhak_CRD Notice of Case Closure.pdf |
| | 2024.6.10_Beck_CRD Notice of Case Closure.pdf |
| | 2024.6.10_Clark_CRD Notice of Case Closure.pdf |
| | 2024.6.10_Holland-Thielen_CRD Notice of Case Closure.pdf |
| | 2024.6.10_Mallon_CRD Notice of Case Closure.pdf |
| | 2024.6.10_Moline_CRD Notice of Case Closure.pdf |
| | 2024.6.10_Nadeau_CRD Notice of Case Closure.pdf |

Karen,

Thank you for providing the arbitration agreements. We do not stipulate to arbitration.

Please do sign and return the NAR. We served defendant Musk, not SpaceX, as you had represented to us that you would accept service for SpaceX.

Please find attached notices of right to sue from CRD for plaintiffs Abdulhak, Beck, Clark, Holland-Thielen, Mallon, Moline, and Nadeau.

Anne

---

**From:** Cho, Karen Y. <karen.cho@morganlewis.com>
**Sent:** Wednesday, July 17, 2024 9:15 PM
**To:** Shaver, Anne B. <ashaver@lchb.com>; Keenley, Elizabeth <ekeenley@lchb.com>; Zargarof, Jennifer B. <jennifer.zargarof@morganlewis.com>
**Cc:** 'l burgess' <lburgess@burgess-laborlaw.com>
**Subject:** [EXT] RE: Holland-Thielen, et al. v. SpaceX, et ano., No. 24STCV14693 (Cal. Super. Ct. L.A. Cnty.)

Hi Anne,

We understand that your office went ahead and served SpaceX, so we won't be returning the NAR. Please let us know if that is not the case and you would still like for us to sign and return the NAR.

Separately, we've attached the arbitration agreements for your clients here. We understand you will be opposing our motion to compel arbitration, but please let us know if Plaintiffs will stipulate to arbitration.

Thanks,

**Karen Y. Cho**
Pronouns: She/Her/Hers
**Morgan, Lewis & Bockius LLP**
300 South Grand Avenue, Twenty-Second Floor | Los Angeles, CA 90071-3132
Direct: +1.213.612.7381 | Main: +1.213.612.2500 | Fax: +1.213.612.2501
karen.cho@morganlewis.com | www.morganlewis.com



**From:** Shaver, Anne B. <ashaver@lchb.com>
**Sent:** Tuesday, July 2, 2024 9:20 AM
**To:** Keenley, Elizabeth <ekeenley@lchb.com>; Cho, Karen Y. <karen.cho@morganlewis.com>; Zargarof, Jennifer B. <jennifer.zargarof@morganlewis.com>; Mills, Jason S. <jason.mills@morganlewis.com>
**Cc:** 'l burgess' <lburgess@burgess-laborlaw.com>
**Subject:** RE: Holland-Thielen, et al. v. SpaceX, et ano., No. 24STCV14693 (Cal. Super. Ct. L.A. Cnty.)

[EXTERNAL EMAIL]

Counsel,

Please send the receipt of service. In addition, please let us know if you have information regarding Mr. Musk's representation in this matter.

Thank you,
Anne

---

**From:** Keenley, Elizabeth <ekeenley@lchb.com>
**Sent:** Thursday, June 27, 2024 11:01 AM
**To:** 'karen.cho@morganlewis.com' <karen.cho@morganlewis.com>; 'jennifer.zargarof@morganlewis.com' <jennifer.zargarof@morganlewis.com>; 'jason.mills@morganlewis.com' <jason.mills@morganlewis.com>
**Cc:** Shaver, Anne B. <ashaver@lchb.com>; 'l burgess' <lburgess@burgess-laborlaw.com>
**Subject:** Holland-Thielen, et al. v. SpaceX, et ano., No. 24STCV14693 (Cal. Super. Ct. L.A. Cnty.)

Counsel,

Thank you for agreeing to accept service for Defendant Space Exploration Technologies Corp. Please sign and return the attached Acknowledgment of Receipt at your earliest convenience.

Thank you.

# Lieff Cabraser Heimann & Bernstein

Attorneys at Law

**Elizabeth Keenley**
Senior Paralegal
ekeenley@lchb.com
t 415.956.1000
f 415.956.1008
Pronouns: she/her/hers
Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
www.lieffcabraser.com

This message is intended for the named recipients only. It may contain information protected by the attorney-client or work-product privilege. If you have received this email in error, please notify the sender immediately by replying to this email. Please do not disclose this message to anyone and delete the message and any attachments. Thank you.

# EXHIBIT B









1  MORGAN, LEWIS & BOCKIUS LLP
   Jennifer B. Zargarof, Bar No. 204382
2  Karen Y. Cho, Bar No. 274810
   300 South Grand Avenue
3  Twenty-Second Floor
   Los Angeles, CA 90071-3132
4  Tel:    +1.213.612.2500
   Fax:    +1.213.612.2501
5  jennifer.zargarof@morganlewis.com
   karen.cho@morganlewis.com
6
   Attorneys for Defendant
7  SPACE EXPLORATION TECHNOLOGIES CORP.

Electronically FILED by
Superior Court of California,
County of Los Angeles
8/15/2024 12:08 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By A. Lopez, Deputy Clerk

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                     COUNTY OF LOS ANGELES

10

11 PAIGE HOLLAND-THIELEN, an individual;     Case No. 24STCV14693
12 YAMAN ABDULHAK, an individual; SCOTT
   BECK, an individual; REBEKAH CLARK, an    Assigned to: Hon. Mel Red Recana
13 individual; DEBORAH LAWRENCE, an                   Dept. 45
   individual; CLAIRE MALLON, an individual;
14 TOM MOLINE, an individual; and ANDRE       **DEFENDANT SPACE EXPLORATION
   NADEAU, an individual;                     TECHNOLOGIES CORP.'S ANSWER**
15
                    Plaintiffs,               Date Action Filed: June 12, 2024
16
17           vs.

18 SPACE EXPLORATION TECHNOLOGIES
   CORP. D/B/A SPACEX, a Texas corporation;
19 and ELON MUSK, an individual;

20                  Defendants.

21

22

23

24

25

26

27

28

1    Defendant Space Exploration Technologies Corp. ("SpaceX") hereby submits this Answer

2    to Plaintiffs Paige Holland-Thielen, Yaman Abdulhak, Scott Beck, Rebekah Clark, Deborah

3    Lawrence, Claire Mallon, Tom Moline, and Andre Nadeau's ("Plaintiffs") Complaint (the

4    "Complaint") and denies and avers as follows:

5    <u>**GENERAL DENIAL**</u>

6    Pursuant to Section 431.30 of the California Code of Civil Procedure, SpaceX generally

7    denies all the allegations in Plaintiffs' unverified Complaint, and further denies that Plaintiffs

8    have been damaged in any amount, or at all.  SpaceX also specifically denies that it is liable to

9    Plaintiffs for the sum or sums alleged or for any other amount whatsoever.

10    <u>**ADDITIONAL DEFENSES**</u>

11    The defenses asserted herein are based on SpaceX's knowledge, information, and belief at

12    this time with the express reservation that discovery has not yet commenced and trial preparation

13    has not yet occurred.  SpaceX therefore specifically reserves the right to modify, amend, or

14    supplement any defense contained herein at any time during this Action.  Without conceding that

15    it bears the burden of proof or persuasion as to any one of them, SpaceX alleges the following

16    separate defenses to the claims asserted in the Complaint:

17    <u>**FIRST ADDITIONAL DEFENSE**</u>

18    **(Arbitration Agreement)**

19    SpaceX alleges that Plaintiffs' claims are barred in whole or in part because they are

20    subject to mandatory, final and binding arbitration pursuant to one or more applicable binding

21    arbitration agreements for which SpaceX will be filing a Motion to Compel Arbitration.

22    <u>**SECOND ADDITIONAL DEFENSE**</u>

23    **(Failure to State a Cause of Action)**

24    As a separate defense, SpaceX alleges that the Complaint fails to state facts sufficient to

25    constitute a cause of action upon which relief can be granted against SpaceX.

26    ///

27    ///

28    ///

1

## THIRD ADDITIONAL DEFENSE

2

### (Statute of Limitations)

3    As a separate defense, SpaceX alleges that Plaintiffs' claims are barred in whole or in part

4    to the extent that Plaintiffs allege conduct that occurred prior to the applicable statute(s) of

5    limitations, including but not limited to, Government Code section 12960.

6

## FOURTH ADDITIONAL DEFENSE

7

### (Failure to Exhaust Administrative Remedies)

8    As a separate defense, SpaceX alleges that Plaintiffs' claims are barred, in whole or in

9    part, because Plaintiffs failed to timely, adequately, and/or fully exhaust their administrative

10    remedies with the Equal Employment Opportunity Commission ("EEOC"), the Civil Rights

11    Department ("CRD") (formerly the Department of Fair Employment and Housing) and/or

12    pursuant to any other applicable statute or regulation that requires exhaustion of administrative

13    remedies.

14

## FIFTH ADDITIONAL DEFENSE

15

### (Exceeds Scope of Administrative Charge)

16    As a separate defense, SpaceX alleges that Plaintiffs' claims brought under the Fair

17    Employment and Housing Act ("FEHA") are barred to the extent that Plaintiffs' allegations

18    exceed the scope of any charges or complaints of discrimination, harassment, or retaliation

19    Plaintiffs filed with the EEOC and/or the CRD.

20

## SIXTH ADDITIONAL DEFENSE

21

### (Business Judgment)

22    As a separate defense, Plaintiffs' Complaint, and each cause of action, is barred because

23    the alleged conduct of which Plaintiffs complain, if committed, was made in good faith, honestly,

24    not maliciously, and in the exercise of business judgment and for legitimate, non-discriminatory,

25    lawful reasons that were not based on any improper or illegal consideration.

26    ///

27    ///

28    ///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SEVENTH ADDITIONAL DEFENSE

### (After-Acquired Evidence)

As a separate defense, SpaceX alleges that to the extent that SpaceX has acquired or subsequently acquires after Plaintiffs' employment (including during the course of this litigation) any evidence of wrongdoing by Plaintiffs, which wrongdoing would have materially affected the terms and conditions of Plaintiffs' employment or would have resulted in Plaintiffs either being demoted, disciplined, terminated or subject to other adverse action, such after-acquired evidence shall bar and/or limit the amount of damages Plaintiffs can recover on their claims, if any, assuming *arguendo*, Plaintiffs are able to establish liability, which SpaceX vigorously denies.

## EIGHTH ADDITIONAL DEFENSE

### (Pre-Existing Conditions)

As a separate defense, SpaceX alleges that to the extent Plaintiffs purportedly have suffered any emotional pain, suffering, inconvenience, mental pain, loss of enjoyment of life, or any other non-pecuniary losses, which SpaceX wholly denies, SpaceX is not responsible to the extent that some or all of such injuries are due to personal circumstances existing in Plaintiffs' life during the relevant time or to pre-existing conditions.

## NINTH ADDITIONAL DEFENSE

### (Mitigation)

As a separate defense, SpaceX alleges that Plaintiffs' alleged damages are barred by Plaintiffs' failure to fully, diligently, and adequately mitigate their alleged damages, if any.

## TENTH ADDITIONAL DEFENSE

### (Estoppel)

As a separate defense, SpaceX alleges that Plaintiffs' claims are barred in whole or in part by the doctrine of estoppel.

///

///

///

///

- 4 -

DEFENDANT SPACE EXPLORATION TECHNOLOGIES CORP.'S ANSWER

**ELEVENTH ADDITIONAL DEFENSE**

**(Offset/Set-Off)**

As a separate defense, SpaceX alleges that any recovery on Plaintiffs' Complaint, or any purported cause of action alleged therein, are subject to the doctrines of offset, set-off, and/or recoupment.

**TWELFTH ADDITIONAL DEFENSE**

**(One Satisfaction)**

As a separate defense, SpaceX alleges that Plaintiffs cannot properly recover damages under multiple or different theories or causes of action for the same or similar alleged acts.

**THIRTEENTH ADDITIONAL DEFENSE**

**(Comparative Fault And/Or Negligence)**

As a separate defense, SpaceX alleges that any recovery to which Plaintiffs might be entitled must be reduced by reason of Plaintiffs' own fault and/or negligence.

**FOURTEENTH ADDITIONAL DEFENSE**

**(Avoidable Consequences)**

As a separate defense, SpaceX alleges that Plaintiffs unreasonably failed to take advantage on a timely basis of any preventative or corrective safeguards, procedures or measures provided by SpaceX that would have remedied any alleged unlawful conduct, and that Plaintiffs unreasonably failed otherwise to avoid any alleged harm.  SpaceX exercised reasonable care to prevent and correct promptly any alleged harassing behavior.  Plaintiffs' failure to report the alleged harassment and/or discrimination was unreasonable under the circumstances and, more likely than not, using SpaceX's internal remedies and procedures would have prevented some, if not all, of Plaintiffs' claimed damages from occurring.  *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998); *Faragher v. Boca Raton*, 524 U.S. 775 (1998).

**FIFTEENTH ADDITIONAL DEFENSE**

**(Equitable Indemnity/Proportional Fault)**

As a separate defense, Plaintiffs' alleged injuries are the result, in whole or in part, of the acts or omissions of entities or individuals other than SpaceX, including Plaintiffs, and SpaceX's

1  liability, if any, must be reduced by any percentage of fault attributable to those other entities

2  and/or individuals.

3  **SIXTEENTH ADDITIONAL DEFENSE**

4  **(Punitive Damages Unavailable)**

5  As a separate defense, SpaceX alleges that Plaintiffs' Complaint fails to state facts

6  sufficient to support any claim for punitive damages, and SpaceX's good faith actions bar serve

7  as a complete bar to any claim for punitive damages.

8  **SEVENTEENTH ADDITIONAL DEFENSE**

9  **(Unconstitutional Punitive Damages)**

10  As a separate defense, SpaceX alleges that an award of punitive damages would be an

11  unconstitutional denial of SpaceX's right to due process and/or equal protection under the Fifth

12  and Fourteenth Amendments to the United States Constitution and Articles I and IV of the

13  California Constitution.

14  **EIGHTEENTH ADDITIONAL DEFENSE**

15  **(Excessive Fine)**

16  As a separate defense, SpaceX alleges that an award of penalties or punitive damages

17  under the circumstances of this case would constitute an excessive fine and otherwise would be in

18  violation of SpaceX's due process and other rights under the United States and California

19  Constitutions.

20  **NINETEENTH ADDITIONAL DEFENSE**

21  **(Alternative Stressors)**

22  As a separate defense, Plaintiffs' claims for emotional distress damages are barred in

23  whole or in part because other stressors, unrelated to their claims in this lawsuit, caused all or

24  some of their emotional distress, if any.

25  ///

26  ///

27  ///

28  ///

- 6 -

1

### TWENTIETH ADDITIONAL DEFENSE

2

#### (Same Decision/Mixed Motive)

3    As a separate defense, SpaceX maintains that its personnel decisions were based on

4    legitimate nondiscriminatory and nonretaliatory reasons and that SpaceX would have made the

5    same decisions regardless of any allegations by Plaintiffs for legitimate, independent reasons.

6

### TWENTY-FIRST ADDITIONAL DEFENSE

7

#### (Reasonable Care and Prompt Remedial Action)

8    As a separate defense, SpaceX alleges that Plaintiffs' claims are barred, in whole or in

9    part, because SpaceX exercised reasonable care and prompt and appropriate remedial action was

10    taken by SpaceX in response to Plaintiffs' reported allegations, if any.

11

### TWENTY-SECOND ADDITIONAL DEFENSE

12

#### (Privilege/Justification)

13    As a separate defense, SpaceX alleges that SpaceX's conduct was a just and proper

14    exercise of managerial discretion, undertaken for fair and honest reasons, comporting with good

15    faith under the circumstances, then existing, and was privileged and justified.

16

### TWENTY-THIRD ADDITIONAL DEFENSE

17

#### (Legitimate, Non-Discriminatory Reason)

18    As a separate defense, SpaceX alleges that Plaintiffs' claims are barred in whole or in part

19    because SpaceX acted based on legitimate, non-discriminatory and non-retaliatory reasons and/or

20    business necessity.

21

### TWENTY-FOURTH ADDITIONAL DEFENSE

22

#### (Unclean Hands)

23    As a separate defense, SpaceX alleges that Plaintiffs' claims are barred in whole or in part

24    by the doctrine of unclean hands by all or some of the Plaintiffs.

25    ///

26    ///

27    ///

28    ///

1

**TWENTY-FIFTH ADDITIONAL DEFENSE**

2

**(Consent)**

3      As a separate defense, SpaceX alleges that Plaintiffs' claims are barred in whole or in part

4    because of Plaintiffs' consent and/or voluntary participation in all or some of the acts alleged or

5    conduct similar thereto.

6

**TWENTY-SIXTH ADDITIONAL DEFENSE**

7

**(Additional Defenses)**

8      Given that discovery has not commenced there may be additional defense for which

9    SpaceX does not presently have knowledge on which to form a belief as to the assertion of such

10   defenses.  Accordingly, SpaceX reserves all rights to assert any additional available defenses of

11   which SpaceX becomes aware during the course of discovery or otherwise.

12

**PRAYER**

13      WHEREFORE, SpaceX respectfully requests that:

14           1.      The Complaint be dismissed in its entirety with prejudice;

15           2.      That Plaintiffs take nothing by this action;

16           3.      That judgment be entered in favor of SpaceX and against Plaintiffs on all

17   causes of action;

18           4.      That SpaceX be awarded its costs of suit incurred herein;

19           5.      That SpaceX be awarded its attorneys' fees incurred herein; and

20           6.      That the Court award SpaceX such other and further relief as the Court

21   may deem just and proper.

22

23   Dated: August 15, 2024                    MORGAN, LEWIS & BOCKIUS LLP

24

25                                             By  */s/ Karen Y. Cho*
                                                   _____
26                                                 Jennifer B. Zargarof
                                                   Karen Y. Cho
27                                                 Attorneys for Defendant
                                                   SPACE EXPLORATION
28                                                 TECHNOLOGIES CORP.

1    **PROOF OF SERVICE**

2        I am a citizen of the United States and employed in Los Angeles County, California.  I am over the age of eighteen years and not a party to the within entitled action.  My business address is 300 South Grand Avenue, Twenty-Second Floor, Los Angeles, CA  90071-3132.

3

4        On August 15, 2024, I served a copy of the within document(s):

5    **DEFENDANT SPACE EXPLORATION TECHNOLOGIES CORP.'S ANSWER**

6

7    ☐        by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, the United States mail at Los Angeles, California addressed as set forth below.

8

9    ☐        by placing the document(s) listed above in a sealed FedEx envelope and affixing a pre-paid air bill and causing the envelope to be delivered to a FedEx agent for delivery.

10

11    ☒        by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

12

13    Anne B. Shaver                                   Laurie M. Burgess
LIEFF CABRASER HEIMANN &            BURGESS LAW OFFICES, P.C.
14    BERNSTEIN, LLP                              498 Utah Street
275 Battery Street, 29th Floor              San Francisco, CA  94110
15    San Francisco, CA  94111-3339          Tel: (312) 320-1718
Tel: (415) 956-1000                         lburgess@burgess-laborlaw.com
16    ashaver@lchb.com

17

18        I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

19

20

21        I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

22        Executed on August 15, 2024, at Los Angeles, California.

23

24                                                    _____

25                                                    Kimberly Gudiel

26

27

28