1  Anne B. Shaver (SBN 255928)
2  **LIEFF CABRASER HEIMANN &
   BERNSTEIN, LLP**
3  275 Battery Street, 29th Floor
   San Francisco, CA  94111-3339
4  Telephone:  415.956.1000
   Facsimile:  415.956.1008
5  ashaver@lchb.com

6  *Attorney for Plaintiffs*

7

8                  UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10

11  PAIGE HOLLAND-THIELEN, an          Case No. 2:24-cv-06972
    individual; YAMAN ABDULHAK,
12  an individual; SCOTT BECK, an      **PLAINTIFFS' NOTICE OF
    individual; REBEKAH CLARK, an      MOTION AND MOTION TO
13  individual; DEBORAH                REMAND; MEMORANDUM OF
    LAWRENCE, an individual;           POINTS AND AUTHORITIES IN
14  CLAIRE MALLON, an individual;      SUPPORT THEREOF**
    TOM MOLINE, an individual; and
15  ANDRE NADEAU, an individual,       Date:      October 7, 2024
                                       Time:      10:00 A.M.
16                 Plaintiffs,         Ctrm:      8D, 8th Floor

17  v.
                                       (Los Angeles Superior Court Case No.
18  SPACE EXPLORATION                  24STCV14693)
    TECHNOLOGIES CORPORATION
19  D/B/A SPACEX, a Texas
    corporation; and ELON MUSK, an
20  individual

21                 Defendants.

22

23

24

25

26

27

28

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 7, 2024 at 10:00 A.M., or as soon thereafter as this matter may be heard, in Courtroom 8D of the United States District Court for the Central District of California, located at 350 West First Street, Los Angeles, California, Plaintiffs Paige Holland-Thielen, Yaman Abdulhak, Scott Beck, Rebekah Clark, Deborah Lawrence, Claire Mallon, Tom Moline, and André Nadeau ("Plaintiffs") will, and hereby do, move this Court for an order remanding this case to the Superior Court of California, County of Los Angeles.

Plaintiffs bring this motion to remand pursuant to 28 U.S.C. § 1447(c) on the grounds that no diversity of citizenship exists here because several Plaintiffs and Defendant Space Exploration Technology Corp. ("SpaceX") were citizens of California at the time the case was filed, and therefore this Court does not have subject matter jurisdiction over the present case.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on August 29, 2024.

This Motion is made based upon this Notice, the accompanying Memorandum of Points and Authorities, the attached Declarations of Elizabeth Keenley, Scott Beck, and Tom Moline and the exhibits thereto, Plaintiffs' Request for Judicial Notice and the exhibits thereto filed herewith, all pleadings and records on file in this action, and upon such oral and documentary evidence that may be presented on or before the hearing on this matter.


Dated:  September 9, 2024          Respectfully submitted,


By: */s/ Anne B. Shaver*
Anne B. Shaver

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Anne B. Shaver (State Bar No. 255928)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008
ashaver@lchb.com

*Attorney for Plaintiffs*

1
2

# **TABLE OF CONTENTS**

**Page**

3   INTRODUCTION ................................................................................................ 1

4   FACTS ................................................................................................................ 1

5   ARGUMENT ...................................................................................................... 7

6   I.    Legal Standard.......................................................................................... 7

7   II.   There Is No Diversity Jurisdiction Because SpaceX's Principal Place of
       Business on June 12, 2024 Was Hawthorne .............................................. 9

8
9         A.    At the Time Of Filing Hawthorne Was SpaceX's *de facto* Nerve
              Center ............................................................................................. 11

10        B.    The Facts Offered In The Chapman Declaration Lack Foundation And
              Are Irrelevant. ............................................................................... 13

11
12  III.  In The Alternative, Plaintiffs Seek Leave To Take Jurisdictional Discovery 17

    CONCLUSION ................................................................................................. 18

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

**Page**

**Cases**

*Abrego Abrego v. The Dow Chem. Co.*,
    443 F.3d 676 (9th Cir. 2006) .................................................................. 8

*Aerospace Eng'g Support Corp. v. Eaton Aerospace LLC*,
    No. 22-cv-9317-JFW, 2023 WL 2447519 (C.D. Cal. Mar. 10, 2023) .............. 15

*Boisvert v. Carbon IQ, Inc.*,
    No. 2:22-cv-03303-FLA, 2022 WL 20401314 (C.D. Cal. Aug. 1,
    2022) ...................................................................................... 8, 17

*Carmen v. San Francisco Unified School Dist.*,
    237 F.3d 1026 (9th Cir. 2001) ............................................................... 15

*Evans v. Cardlytics, Inc.*,
    701 F.Supp.3d 1002 (2023) ......................................................... 7, 8, 13

*Gaus v. Miles, Inc.*,
    980 F.2d 564 (9th Cir. 1992) ................................................................ 8

*Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*,
    599 F.3d 1102 (9th Cir. 2010) ................................................................ 8

*Grupo Dataflux v. Atlas Global Group, L.P.*,
    541 U.S. 567 (2004) ..................................................................... 9, 14

*Hertz Corp. v. Friend*,
    559 U.S. 77 (2010) ...............................................................*passim*

*Hunter v. Philip Morris USA*,
    582 F.3d 1039 (9th Cir. 2009) .......................................................... 8, 10

*Joseph v. Vitas Healthcare Corp.*,
    No. 2:19-cv-04987-AB, 2019 WL 4053910 (C.D. Cal. Aug. 27,
    2019) ..........................................................................................*passim*

*L'Garde, Inc. v. Raytheon Space and Airborne Sys.*,
    805 F.Supp.2d 932 (C.D. Cal. 2011) .................................................. 10, 16

*Laub v. U.S. Dep't of Interior*,
    342 F.3d 1080 (9th Cir. 2003) ............................................................... 17

# TABLE OF AUTHORITIES
### (continued)

Page

*Nestle USA, Inc. v. Inn Foods, Inc.*,
  No. CV-17-4840-MWF, 2017 WL 11665627 (C.D. Cal. Oct. 20,
  2017) ......................................................................................................... 12, 13

*Nieves v. Travelers Casualty Ins. Co. of Am.*,
  No. 2:14-cv-05536-CAS, 2014 WL 12696494 (C.D. Cal. Sept. 29,
  2014) (Snyder, J.) ..................................................................................... 10, 11

*Ravishanker v. Mphasis Infrastructure Servs., Inc.*,
  No. 5:15-cv-02346-EJD, 2015 WL 6152779 (N.D. Cal. Oct. 20,
  2015) ........................................................................................................... 8, 15

*Simonson v. Allstate Ins. Co.*,
  2012 WL 3073918 (C.D. Cal. July 27, 2012) (Snyder, J.)................................ 10

*U.S. v. Lopez*,
  762 F.3d 852 (9th Cir. 2014) ...................................................................... 13, 14

*U.S. v. Shumway*,
  199 F.3d 1093 (9th Cir. 1999) .......................................................................... 14

**Statutes**

28 U.S.C. 1332(a)(1) ........................................................................................... 1

28 U.S.C. § 1332(c)(1) ...................................................................................... 10

28 U.S.C. § 1447(d)............................................................................................. 9

**Treatises**

2 Wigmore, Evidence § 657 (3d ed. 1940)........................................................ 13

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiffs are eight former employees of Defendant SpaceX. Seven of the eight worked for SpaceX at its headquarters in Hawthorne, California; the eighth worked in Redmond, Washington, reporting to managers in Hawthorne. Complaint, ¶¶4-11. SpaceX fired Plaintiffs in retaliation for reporting sexual harassment and a hostile work environment. *Id.*, ¶¶1-2. After exhausting administrative remedies with California's Civil Rights Division, Plaintiffs filed a lawsuit in Los Angeles Superior Court on June 12, 2024 alleging claims solely under state law including, *inter alia*, sexual harassment, hostile work environment, retaliation, and wrongful termination. *Id.*, ¶¶20-21, 124-196. SpaceX filed a Notice of Removal to federal court on August 16, 2024 based on diversity jurisdiction. ECF 1.

Plaintiffs respectfully request that the Court remand this case to state court where it belongs. There is no diversity jurisdiction because at the time the Complaint was filed four Plaintiffs and Defendant SpaceX were citizens of the same state: California. Complaint ¶¶6, 7, 10, 11, 12. SpaceX's principal place of business was (and is) Hawthorne, California. *Id.*, ¶12. Therefore, the Court lacks subject matter jurisdiction under 28 U.S.C. 1332(a)(1). In the alternative, Plaintiffs seek leave to take jurisdictional discovery should the Court determine more facts are needed.

## FACTS

Plaintiffs were each engineers employed by SpaceX. Seven worked at SpaceX's principal place of business, Hawthorne, California, and the eighth's work was directed from there. Complaint, ¶¶4-11. Plaintiffs came to know one another through a common concern: rampant, unchecked sexual harassment and discrimination against female employees and demeaning treatment of the LGBTQ+ community, including statements and memes posted by SpaceX's CEO Elon Musk. *Id.*, ¶¶22-36. In May, 2022, intent upon effectuating workplace changes, the

Plaintiffs wrote and sent an "Open Letter" to SpaceX's management asking that the company (1) distance itself from Musk's social media comments by making clear that his comments were not SpaceX's own position and (2) affirm its obligation and commitment to enforcing an anti-harassment policy in the workplace. *Id*., ¶¶37-40.

Initially, employees and management alike welcomed the Open Letter and change that they believed would be effectuated; however, the day after it was released, four of the Plaintiffs were fired for "conceiving of, writing, and distributing the Open Letter." Complaint, ¶46. SpaceX's President confirmed in an email to the entire Company that these employees were fired for their role in writing and circulating the Open Letter. *Id*. After conducting a series of coercive interviews, SpaceX terminated the employment of the other four Plaintiffs whom it discovered were also involved in drafting the Open Letter. *Id*., ¶¶47-49.

Plaintiffs timely filed charges with the California Civil Rights Department and after receiving right to sue letters, they filed suit in Los Angeles Superior Court on June 12, 2024. Complaint, ¶¶20-21. As of that date, four of the eight Plaintiffs were citizens of California. *Id*., ¶¶6, 7, 10, 11. The following facts support the inevitable conclusion that as of the time the Complaint was filed Hawthorne, California was (and remains) SpaceX's principal place of business within the meaning of "diversity" jurisprudence:

### Location of SpaceX Headquarters

SpaceX publicly lists Hawthorne as its "headquarters" on its website:

> SpaceX designs and builds its reusable rockets and spacecraft at its **headquarters** in Hawthorne, California. As a company, SpaceX is vertically integrated, building the vast majority of the vehicle on the Hawthorne campus. SpaceX **headquarters** remains one of the few facilities in the world where you can see an entire launch vehicle or spacecraft come together under one roof.

1   *See* Plaintiffs' Request for Judicial Notice ("RJN"), filed herewith, Ex. A

2   (SpaceX's website) (emphasis supplied). SpaceX's website describes additional

3   primary facilities in Vandenberg Air Force Base, California; McGregor, Texas;

4   Starbase, Texas; Cape Canaveral, Florida; and Kennedy Space Center, Florida.

5   RJN, Ex. A. Plaintiffs' copy of SpaceX's Employee Handbook from March, 2021

6   states that Hawthorne became SpaceX's headquarters in October 2007 and

7   continues to identify Hawthorne as its "headquarters." Moline Decl., Ex. A, pp. 9,

8   11. It identifies the other five facilities listed above as launch, landing, or test sites.

9   *Id*., p. 11.

10       Likewise, the Federal Aviation Administration (the agency tasked with

11   "regulat[ing] commercial launch and reentry activities") describes SpaceX as

12   "headquartered in Hawthorne, California" in an August 12, 2024 public notice

13   concerning SpaceX. RJN, Ex. E.[1]

14       On July 16, 2024—**over a month after the Complaint** was filed—CEO

15   Elon Musk announced on his social media platform, X (formerly Twitter) that

16   because of a newly enacted law in California, "SpaceX **will now** move its HQ from

17   Hawthorne, California to Starbase, Texas." RJN, Ex. C (emphasis supplied). The

18   City of Brownsville, Texas reported the announcement on its webpage on July 19,

19   2024, noting the proximity of Brownsville to Starbase. RJN, Ex. D. On August 13,

20   2024—two months after the Complaint was filed—SpaceX changed its principal

21   place of business with the California Secretary of State from Hawthorne, California

22   to Brownsville, Texas. RJN, Ex. F. However, the address for SpaceX on file with

23   the Texas Secretary of State remains Hawthorne, California, and the Texas report

24   also lists Hawthorne as the address for the seven officers listed, including CEO

25   _____

26   [1] This notice states that the FAA has postponed public hearing on whether SpaceX
     will be permitted to conduct heavy launch operations from Starbase, *id*., calling into
     question whether headquarters will indeed move in the future. *See also* RJN, Ex. D
27   (City of Brownsville announcement noting that "[a]s part of its expansion plans,
     SpaceX aims to increase the number of launches and landings at the Boca Chica
28   [Starbase] launch site . . . . To achieve this, the company requires approval from the
     [FAA].").

Musk and COO Shotwell. RJN, Ex. H. SpaceX's filing with the Florida Secretary of State likewise continues to list Hawthorne as SpaceX's principal address, and Hawthorne as the address for the seven officers including Musk and Shotwell. RJN, Ex. G.

### Location of CEO Musk and COO Shotwell

Plaintiffs do not know where Musk resides or where he works while in Texas, and SpaceX has failed to provide that information. According to the Texas and Florida Secretaries of State, his address is in Hawthorne. RJN, Exs. G & H. SpaceX's Notice of Removal states only that Musk "reside[s] in" and has "directed [] operations" from "Texas." ECF 1, ¶9. However, even if that is accurate, it does not state *where* in Texas, and SpaceX maintains a presence in at least four separate locations in Texas: Houston, Starbase, McGregor, and Bastrop. RJN, Ex. L (Declaration of Donald Leclerc), ¶¶5-8. Nor does SpaceX describe the extent to which Musk conducts "operations" out of each of these sites or elsewhere outside of Texas. Indeed, over the course of their employment at SpaceX spanning eight years, Plaintiffs Tom Moline and Scott Beck observed that Musk was frequently in and out of the Hawthorne headquarters and provided direction to employees via email and via Tweets from wherever he happened to be in the moment.[2] Moline Decl., ¶3; Declaration of Scott Beck ("Beck Decl."), ¶3.

Plaintiffs do, however, have information regarding where COO Gwynne Shotwell works. In a declaration filed under penalty of perjury on January 20, 2024 in the Southern District of Texas, COO Shotwell stated: "My primary place of employment is SpaceX's Rocket Development and Test Facility located in **McGregor, Texas**,"—*not* at its purported new headquarters in Starbase. RJN, Ex. M, ¶2 (Declaration of Gwynne Shotwell) (emphasis supplied).

---

[2] As noted above, Plaintiffs lack personal knowledge regarding Musk's personal residence, citizenship, and whereabouts—facts that could be established from discovery including the production of his calendar through June 12, 2024.

1

## Location of SpaceX's Leadership Team

2         Vice Presidents at SpaceX are considered "senior member[s] of SpaceX's

3 leadership team." Moline Decl., Ex. A (Employee Handbook), p. 45. Based on

4 publicly available filings with the Federal Election Commission dated June 21,

5 2024 and current LinkedIn resumes, Plaintiffs have compiled the following

6 information showing that 19 of 23 of the leaders at the Vice President level and

7 above are in California (16 in or near Hawthorne, and 3 in the Bay Area), and none

8 are in Starbase, Texas:

| Name | Title | Location | Source |
|---|---|---|---|
| Phil Alden | Vice President of Starship Production | Hawthorne, CA | LinkedIn |
| Brian Bjelde | Vice President of Human Resources | Hawthorne, CA | FEC LinkedIn |
| Christopher Cardaci | Vice President of Legal | Washington, D.C. | LinkedIn |
| Kiko Dontchev | Vice President of Launch | Florida | LinkedIn |
| Lauren Dreyer | Vice President of Starlink Business Operations | McGregor, Texas | LinkedIn |
| Jon Edwards | Vice President of Falcon Launch Vehicles | Hawthorne, CA | FEC LinkedIn |
| William Gerstenmaier | Vice President of Build & Flight Reliability | Hawthorne, CA | LinkedIn |
| Samuel Gibbs IV | Vice President of Starlink Business Operations | Hawthorne, CA | LinkedIn |
| David Goldman | Vice President of Satellite Policy | Washington, D.C. | LinkedIn |
| Jonathan Hofeller | Vice President of Starlink Commerical Sales | Hawthorne, CA | FEC LinkedIn |
| Tim Hughes | Senior Vice President of Global Business & Government Affairs | Hawthorne, CA | FEC |
| Jessica Jensen | Vice President of Customer Operations and Integration | Venice, CA (Los Angeles County) | FEC LinkedIn |

| Name | Title | Location | Source |
|---|---|---|---|
| Bret Johnsen | Chief Financial Officer | Palos Verdes Estat, CA (Los Angeles County) | FEC LinkedIn |
| Carl Johnson | Vice President | Los Angeles, CA | LinkedIn |
| Mark Juncosa | Vice President of Vehicle Engineering | Playa Del Rey, CA (Los Angeles County) | FEC LinkedIn |
| Stuart Keech | Vice President of Dragon Engineering | Long Beach, CA (Los Angeles County) | LinkedIn |
| Charles Kuehmann | Vice President of Materials Engineering | San Francisco Bay Area, CA | LinkedIn |
| Jacob McKenzie | Vice President of Raptor | Los Angeles, CA | LinkedIn |
| Michael Nicolls | Vice President of Starlink Engineering | Menlo Park, CA | LinkedIn |
| Terrence O'Shaughnessy | Senior Advisor and Vice President of Special Programs Group | Hawthorne, CA | FEC |
| Joe Petrzelka | Vice President of Spacecraft Engineering | Marina Del Rey, CA (Los Angeles County) | LinkedIn |
| Bill Riley | Vice President of Starship Engineering | Hawthorne, CA | LinkedIn |
| Derek Turner | Vice President of Production | Los Angeles, CA | LinkedIn |

Declaration of Elizabeth Keenley, ¶2; RJN, Exs. I (FEC filing) & N (LinkedIn profiles). SpaceX does not allege, and Plaintiffs found no evidence of, any other leadership team member in Starbase, Texas. Keenley Decl., ¶2.

### **Location of SpaceX's Finance & Human Resources Departments**

According to the June 21, 2024 Federal Election Commission filing, SpaceX's Chief Financial Officer, Bret Johnsen, and Vice President of Human Resources, Brian Bjelde, are located in or next to Hawthorne. RJN, Ex. I. Likewise, Johnsen's address on file with the Texas and Florida Secretaries of State is Hawthorne. *Id*., Exs. G & H. Senior Director of Human Resources Lindsay Chapman signed her declaration in support of SpaceX's Notice of Removal in Los

Angeles County, California. ECF 1-2. Plaintiffs' pay statements, including those for non-California residents, were issued from Hawthorne headquarters. Beck Decl., ¶4; Moline Decl., ¶4. As recently as January 2024, Plaintiff Beck received a W2 in connection with sale of company stock that was issued from Hawthorne headquarters. Beck Decl., ¶5 & Ex. A.

### Location of SpaceX's Employee Hub

Hawthorne is also clearly SpaceX's major employee hub. According to SpaceX's recent court filings, it has 13,000 employees, only 1,676 (or 13%) of which are in Starbase. RJN, Ex. K (SpaceX Complaint), ¶35; *id.*, Ex. L (Leclerc Decl.), ¶5. To this day, despite Musk's purported intention to move SpaceX's operations to Texas, SpaceX is advertising over twice as many job openings in Hawthorne as in Starbase. Moline Decl., ¶5. A search of open positions listed on SpaceX's careers webpage shows 928 open positions, allocated as follows:

- Hawthorne, CA: 345 **(37.2%)**
- Vandenberg, CA: 36 **(3.9%)**
- Sunnyvale, CA: 17 **(1.8%)**
- Irvine, CA: 8 **(0.9%)**
- Redmond, WA: 158 **(17%)**
- Kent, WA: 2 **(0.2%)**
- Starbase, TX: 155 **(16.7%)**
- Bastrop, TX: 119 **(12.8%)**
- McGregor, TX: 20 **(2.2%)**
- Cape Canaveral, FL: 40 **(4.3%)**
- Washington DC: 25 **(2.7%)**
- Jakarta, Indonesia: 1 **(0.1%)**
- Singapore: 2 **(0.2%)**

Moline Decl., ¶5; *see also* RJN, Ex. B (SpaceX "Careers" website).

### ARGUMENT

**I.    Legal Standard**

It is long and well-established law that "a suit commenced in a state court must remain there until cause is shown for its transfer under some act of Congress."

*Evans v. Cardlytics, Inc.*, 701 F.Supp.3d 1002, 1006 (2023) (quoting *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002)). "Where Congress has acted to create a right of removal, those statutes, unless otherwise stated, are <u>strictly construed against removal jurisdiction</u>." *Id*. (emphasis supplied). The removing defendant bears the burden of establishing that removal is proper. *See Abrego Abrego v. The Dow Chem. Co*., 443 F.3d 676, 684 (9th Cir. 2006) (noting the "longstanding, near-canonical rule that the burden on removal rests with the removing defendant"); *Gaus v. Miles, Inc*., 980 F.2d 564, 566 (9th Cir. 1992) ("[t]he strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper" (quotation marks omitted)). Any doubts regarding the existence of subject matter jurisdiction must be resolved in favor of remand. *See id.* ("[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance"); *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (any ambiguities must be resolved "in favor of remand to the state court."); *Hertz Corp. v. Friend*, 559 U.S. 77 (2010) (party seeking removal bears the burden of proving that the action involves exclusively citizens of different states.)

The defendant must prove the existence of jurisdictional facts by a preponderance of the evidence. *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1107 (9th Cir. 2010); *Boisvert v. Carbon IQ, Inc.,* No. 2:22-cv-03303-FLA, 2022 WL 20401314 (C.D. Cal. Aug. 1, 2022). Thus, similar to summary judgment proceedings where the movant bears the burden of proof, a defendant seeking to remove an action may not offer mere legal conclusions; it must allege the underlying facts supporting each of the requirements for removal jurisdiction. *Gaus,* 980 F.2d at 567. *See also Joseph v. Vitas Healthcare Corp.*, No. 2:19-cv-04987-AB, 2019 WL 4053910, at *3 (C.D. Cal. Aug. 27, 2019) (finding that "a self-serving declaration without corroborating evidence [is] insufficient"); *Ravishanker v. Mphasis Infrastructure Servs., Inc.*, No. 5:15-cv-02346-EJD, 2015

WL 6152779, *2 (N.D. Cal. Oct. 20, 2015) (holding that a "self-serving declaration" without "any other evidence that can corroborate the statements made in the declaration" is insufficient to establish diversity jurisdiction). The Court's determination regarding a defendant's failure to sustain its burden of proof is presumed correct—it is not reviewable on appeal. 28 U.S.C. § 1447(d) ("[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise[.]")

Here, SpaceX's Notice of Removal fails because it has not sustained its burden of producing "competent proof" demonstrating federal jurisdiction over this matter. *Hertz*, 599 U.S. at 96-97; *Joseph*, 2019 WL 4053910 at *2. Notably, the only "proof" that SpaceX submits in support of its motion to remove is the Declaration from a Human Resources Director *located in SpaceX's principal place of business—Hawthorne, California*—which provides hearsay and wholly unsupported statements regarding activities purportedly occurring in Texas. SpaceX's Motion is not well taken; virtually every fact alleged in its moving papers is grossly misleading, or at best, wholly unsubstantiated. Indeed, removal appears to be an afterthought. Plaintiffs served their Complaint and Summons on SpaceX on June 27, 2024 via email to its counsel, who agreed to accept service on behalf of SpaceX in this manner, yet SpaceX waited until August 16, 2024 to file its Notice of Removal. Its eleventh hour request to remove this matter—based upon hearsay and conjecture—should be flatly rejected. Judicial comity mandates that this matter be promptly remanded to Los Angeles Superior Court so the case may proceed without delay.

## II.    There Is No Diversity Jurisdiction Because SpaceX's Principal Place of Business on June 12, 2024 Was Hawthorne

Diversity is determined by the facts that exist at the time the lawsuit is filed. *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570-71 (2004) ("This time-of-filing rule is hornbook law" that "measures all challenges to subject-matter

1  jurisdiction premised upon diversity of citizenship against the state of facts that

2  existed at the time of filing."); *Nieves v. Travelers Casualty Ins. Co. of Am.*, No.

3  2:14-cv-05536-CAS, 2014 WL 12696494, at *4 (C.D. Cal. Sept. 29, 2014) (Snyder,

4  J.) (holding that status of corporation at time of filing determined defendant's

5  citizenship).

6      A corporation is a citizen of its state of incorporation and the state where it

7  has its principal place of business. 28 U.S.C. §1332(c)(1); *Hertz*, 559 U.S. at 80.

8  Plaintiffs do not dispute that SpaceX's state of incorporation has been Texas since

9  February 2024; thus, only SpaceX's principal place of business is at issue here. "A

10 corporation's 'principal place of business' refers to the place where a corporation's

11 officers direct, control, and coordinate the corporation's activities, i.e., its 'nerve

12 center,' which will typically be found at its corporate headquarters." *Nieves*, 2014

13 WL 12696494, at *3 (citing *Hertz*). Factors that courts consider in determining the

14 location of a corporation's "nerve center" include "where the majority of

15 defendant's executive and administrative functions are performed, where important

16 corporate decisions are made, and where department heads are located." *Simonson

17 v. Allstate Ins. Co.*, 2012 WL 3073918, at *2 (C.D. Cal. July 27, 2012) (Snyder, J.).

18 *See also Nieves*, 2014 WL 12696494, at *5 (same); *L'Garde, Inc. v. Raytheon

19 Space and Airborne Sys.*, 805 F.Supp.2d 932, 940 (C.D. Cal. 2011) (considering

20 where concentration of executive officers worked, where Human Resources,

21 Information Technology, and Finance Departments were located, where the board

22 of directors met, and where the headquarters were). Ultimately, no single piece of

23 evidence is sufficient for a party to prove the location of its headquarters under the

24 nerve center test. *Id*. Any ambiguity is resolved in favor of remand. *Hunter*, 582

25 F.3d at 1042.

26

27

28

A.    **At the Time of Filing Hawthorne Was SpaceX's *de facto* Nerve Center**

All relevant factors weigh heavily in favor of finding that Hawthorne was SpaceX's nerve center at the time of filing. First, the location of headquarters at the time of filing is a key factor in the nerve center test. As the Supreme Court instructs, the nerve center "should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the 'nerve center,' and not simply an office where the corporation holds its board meetings." *Hertz*, 559 U.S. at 93. *See also Joseph*, 2019 WL 4053910, at *1 (noting that "a corporation's 'nerve center' usually will be the corporation's headquarters."); *Nieves*, 2014 WL 12696494, at *3 (finding that a corporation's principal place of business "will typically be found at its corporate headquarters.").

All available public documentation reveals that SpaceX's headquarters were in Hawthorne, California at the time of filing: Musk did not even announce the move from Hawthorne until July 16, 2024, over a month past the filing date. SpaceX's own website still lists Hawthorne as headquarters, as does the Federal Aviation Administration. Texas's Secretary of State lists just one address for SpaceX: Hawthorne. And the California Secretary of State records show that Hawthorne was listed as SpaceX's "principal address" until August 7, 2024. Thus, this factor weighs heavily in favor of remand.

Courts also consider the location of a corporation's leadership team, and the location of its finance and executive functions. The facts show that Hawthorne is where almost all of the leadership team is located, including both the Vice Presidents that oversee SpaceX's functional activities (e.g., vehicle engineering, spacecraft engineering, starship engineering, materials engineering, production, the Falcon rocket, the Dragon spacecraft, and the Raptor engine) and the heads of SpaceX's core administrative functions like finance and human resources. *See* p. 5,

*infra* (table of Vice Presidents). Starbase, by contrast, is a "launch site." Moline
Decl., Ex. A, p. 11. While it may be SpaceX's intention to eventually move its
headquarters to Starbase, that is irrelevant as the undisputable fact is that SpaceX
did not even begin the transition until after the Complaint was filed.

SpaceX relies solely on the location of its CEO and COO[3] to establish a
nerve center in Starbase, Texas. But even if it had met its burden to establish these
two executives work in Starbase—and it has not, *see* §II.B, *infra*—that would be
inadequate to meet its burden. *Nestle USA, Inc. v. Inn Foods, Inc.*, No. CV-17-
4840-MWF, 2017 WL 11665627 (C.D. Cal. Oct. 20, 2017), is directly on point.
There, Nestle filed its complaint in federal court on June 30, 2017 alleging diversity
jurisdiction. *Id*. at *1. While Nestle's headquarters had been in Glendale, California
since 1990, it argued that its current principal place of business was in Arlington,
Virginia because in February 2017 it had announced that it would be moving its
headquarters there, and in anticipation its CEO and a director began working in
Virginia in March 2017. *Id*. at *2. Just as SpaceX does here, Nestle submitted a
declaration stating that these executives "directed the company's overall activities"
from Arlington. *Id*. at *3. This court rejected Nestle's argument, holding that "[t]he
mere relocation of two officers, albeit high-ranking ones, a couple months before a
complaint is filed cannot on its own be enough to shift the 'nerve center' of a multi-
billion-dollar, 51,000-employee corporation that has been headquartered in a single
location for 27 years." *Id*. at *4. Of particular salience here, the court noted that:

> [Nestle] offered no information about, for example: the
> number and titles of its other officers and the nature of
> their roles in the company; the location of its other high-

---

[3] In a wily statement, SpaceX avers that it "**has** key officers in Texas" and that the
CEO and COO "have **resided**" in Texas since June, 2024. ECF 1, ¶¶8-9 (emphasis
supplied). But where the issue before the Court is a corporation's principal place of
business, what matters is not the residence of its officers but where they work.
Furthermore, SpaceX does not specify where in Texas these officers work, making
the allegation totally useless to the nerve center test.

1    level executives as of June 30, 2017; if any other high-

2    level officers/employees who had previously worked in

3    Glendale had left for Arlington by then; or whether any

4    corporate functions that were previously controlled and/or

5    performed in Glendale were being controlled and/or

6    performed in Virginia (or somewhere else) by then.

7    *Id.* at \*3. Of course, SpaceX offers none of these facts either, and the publicly

8    available evidence shows that its other high-level executives continue to run

9    SpaceX's operations from Hawthorne. Indeed, this case is even more clear-cut than

10    *Nestle*, because here SpaceX did not announce the relocation of its headquarters

11    until *after* the filing of the Complaint. Further, at least one of the two senior

12    executives that SpaceX relies on to establish its purportedly "new" nerve at

13    Starbase *does not work there*. RJN, Ex. M at ¶2 (Shotwell Declaration attesting that

14    she works in McGregor).

15        SpaceX's nerve center as of June 12, 2024 was Hawthorne, California.

16    **B.    The Facts Offered in The Chapman Declaration Lack Foundation
         and Are Irrelevant.**

17

18        The "evidence" that SpaceX adduced in support of its Notice only serves to

19    highlight the inappropriateness of the removal it seeks. As noted above, SpaceX

20    bears the burden of "support[ing] their allegations by competent proof." *Hertz*, 599

21    U.S. at 96-97. *See also Evans*, 701 F.Supp.2d at 1007 (same); *Joseph*, 2019 WL

22    4053910, at \*2 (same).

23        Here, the only "evidence" that SpaceX adduces in support of its motion is the

24    Declaration of Lindsay Chapman. In order to be relied upon, her statements must

25    constitute admissible evidence, that is, be based on personal knowledge. *U.S. v.*

26    *Lopez*, 762 F.3d 852, 863-65 (9th Cir. 2014) ("Under [Federal Rule of Evidence]

27    602, a witness may testify to a matter only if evidence is introduced sufficient to

28    support a finding that the witness has personal knowledge of the matter. Personal

knowledge means knowledge produced by the direct involvement of the senses.")
(cleaned up); 2 Wigmore, Evidence § 657 at 762 (3d ed. 1940) ("Personal
knowledge means a present recollection of an impression derived from the exercise
of the witness's own senses."). Of course, the information must also be relevant to
the issue in dispute. Because diversity of citizenship is determined at the time the
complaint is filed, *Grupo*, *supra*, to have any relevance here, the information
proffered by Chapman must be from a time frame on or before June 12, 2024.

Chapman's Declaration does not meet the test. As a basis for her knowledge
regarding SpaceX's principal place of business, Chapman states that she is
"currently employed" (as of August 16, 2024) by SpaceX in the role of "Sr.
Director, Human Resources." ECF 1-2, ¶2. She does not state where or how she
was employed during the time frame relevant to these proceedings, namely, on or
before June 12, 2024. Nor does she state *where* she works. Her Declaration was
executed in Rolling Hills, California and her Attorney Profile with the State Bar of
California lists SpaceX's headquarters in Hawthorne, California as her address.
RJN, Ex. J.

But regardless of where Chapman works (or worked) her broad claim that
she "ha[s] knowledge of SpaceX's business and operations" is too thin to lend
credibility (or foundation) to her assertion that she knows "the location of
[SpaceX's] senior executives and communications to employees." ECF 1-2, ¶3. To
establish a proper foundation the source of the witness' personal knowledge must
be disclosed. *U.S. v. Shumway*, 199 F.3d 1093, 1104-5 (9th Cir. 1999) (sworn
statement regarding what declarant "saw with his own educated eyes" admissible);
*Lopez*, *infra* (rejecting testimony of border agent for lack of personal knowledge
because he was not present at removal). Chapman also fails to state how many
senior executives there are, where they are "located" or what she means by the term
"location": their primary home? their primary office location? There is good reason
for this enormous gap in her testimony: it is against SpaceX's position. As noted

above, available evidence reveals that nearly every Vice President level officer resides in California and its finance and human resources operations are located in California, where Chapman herself works.

Chapman also asserts without any further foundation that SpaceX "has corporate officers in Texas who control and coordinate SpaceX's business activities including Elon Musk." ECF 1-2, ¶5. Nowhere does Chapman establish that in her HR role (in Hawthorne, California) she has personal knowledge of who is "controlling and coordinating" SpaceX's activities, let alone <u>from where</u> they are doing this. Chapman's conclusory statements that Shotwell and Musk have "resided in and directed SpaceX's operations from the State of Texas," ECF 1-2, ¶6, is precisely the type of "mere averment" that the Ninth Circuit has flatly rejected as failing to meet the "competent evidence" test. *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001) ("It is not enough for a witness to tell all she knows; she must know all she tells."). *See also Joseph*, 2019 WL 4053910, at *2 (rejecting "conclusory and unsubstantiated" statements in declaration as sufficient to establish diversity jurisdiction); *Aerospace Eng'g Support Corp. v. Eaton Aerospace LLC*, No. 22-cv-9317-JFW, 2023 WL 2447519, at *2 (C.D. Cal. Mar. 10, 2023) (same); *Ravishanker*, 2015 WL 6152779, at *2 (same).

Furthermore, Chapman's bald assertion that "[s]ince the filing of the Action, SpaceX's CEO and COO have resided in and directed SpaceX's operations **from Texas**," ECF 1, ¶9 (citing Chapman Decl.) (emphasis supplied), is grossly misleading. Chapman fails to mention that SpaceX has at least four facilities in Texas: Starbase, Bastrop, Houston, and McGregor, Texas. RJN, Ex. L (Leclerc Decl.). Per a sworn document executed by Shotwell herself, at least as of January, 2024, she was working out of its McGregor facility, *not* at Starbase. RJN, Ex. M, ¶2 (Shotwell Declaration). Chapman does not specify which (if any) facility in Texas is Musk's primary place of work—likely because he does not have one, or because

it is not Starbase, either. *See Hertz*, 559 U.S. at 95-96 (recognizing that "in this era of telecommuting, some corporations may divide their command and coordinating functions among offers who work at several different locations, perhaps communicating over the internet."). Thus, the location of these two executives does not help SpaceX, even if this single fact were sufficient to meet SpaceX's burden of proof—and it is not. *See Hertz*, 559 U.S. at 97; *L'Garde*, 805 F.Supp.2d at 940 ("California district courts have found that reliance on a single piece of evidence . . . is insufficient for a party to prove the location of its headquarters under the nerve center test.").

Chapman's reliance on data contained in SpaceX's employee handbook suffers a similar foundational defect. Chapman states "SpaceX's *current* employee handbook lists the headquarters of SpaceX as Starbase, Texas." ECF 1-2, ¶7 (emphasis supplied). Because Chapman signed her Declaration on August 16, 2024, the term "current" must refer to that date. Whatever statement the handbook contained as of August 16, 2024 regarding SpaceX's headquarters is utterly irrelevant to assessing diversity as of June 12, 2024 when the Complaint was filed. As of the time that the Plaintiffs worked for SpaceX, the employee handbook listed Hawthorne as SpaceX's headquarters. Moline Decl., Ex. A. Chapman's misleading and temporally irrelevant sworn statement only serves to demonstrate SpaceX's willingness to engage in sleight of hand in attempt to mislead the Court regarding its true principal place of business.

The same is true with respect to Chapman's assertion that "SpaceX held its most recent executive staff meeting at Starbase, Texas on July 20, 2024." ECF 1-2, ¶8. Not only does Chapman—a resident of California who apparently works out of SpaceX's Hawthorne, California office—fail to provide a sufficient foundation for her assertion regarding a meeting that purportedly occurred in Texas (and one that she does *not* purport to have attended), but this allegation is simply irrelevant. SpaceX may intend to shift its principal place of business to Texas in the future, but

1    anything that happened after June 12, 2024—including this alleged July 20, 2024

2    meeting—is utterly irrelevant to assessing diversity jurisdiction in this matter.

3         In sum, the only relevant and admissible testimony to be gleaned from

4    Chapman's Declaration is the fact that as "Sr. Director [of] Human Resources," she

5    was the person selected by SpaceX to testify regarding its business practices and

6    that she executed her Declaration in the State of California, which also appears to

7    be her place of employment and residence. Thus, at best, Chapman's Declaration

8    proves that at least some of SpaceX's core legally significant activities (here,

9    providing its "proof" in support of its request for diversity removal) continue to

10   occur in Hawthorne, SpaceX's principal place of business.

## III.   In The Alternative, Plaintiffs Seek Leave To Take Jurisdictional Discovery

13        The existing evidence demonstrates that, as of June 12, 2024: (1) SpaceX

14   was headquartered in Hawthorne, California; (2) the vast majority of its leadership

15   team worked from Hawthorne; and (3) the functional operations of SpaceX

16   (engineering, production) as well as the administrative operations (finance and

17   human resources) were run from Hawthorne. This is sufficient to confirm that

18   SpaceX's principal place of business was Hawthorne as of the filing of the

19   Complaint. SpaceX, as the party asserting jurisdiction, has failed to offer competent

20   proof of any factual element that could serve as a basis for asserting removal based

21   upon diversity. *Hertz*, 559 U.S. at 96-97 (party asserting diversity jurisdiction has

22   burden to establish removal is proper with competent evidence).

23        Plaintiffs do not expect that SpaceX will be able to adduce facts that

24   contradict the above. However, in the event the Court finds that the relevant facts

25   are controverted, Plaintiffs respectfully request that the Court permit Plaintiffs to

26   take jurisdictional discovery on the issue of SpaceX's principal place of business.

27   *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) ("discovery

28   should ordinarily be granted where pertinent facts bearing on the question of

jurisdiction are controverted or where a more satisfactory showing of the facts is necessary."); *Boisvert*, 2022 WL 20401314, at *2 (granting jurisdictional discovery where there was conflicting evidence regarding principal place of business).

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court remand the case to state court.


Dated:  September 9, 2024          Respectfully submitted,


By: */s/ Anne B. Shaver*
       Anne B. Shaver

Anne B. Shaver (State Bar No. 255928)
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008
ashaver@lchb.com

*Attorney for Plaintiffs*

1

## Certificate of Compliance

2

3       The undersigned counsel of record for Plaintiffs certifies that this brief

4   contains 5,330 words, which complies with the word limit of L.R. 11-6.1.

5

6                                   By: */s/ Anne B. Shaver*
                                    Anne B. Shaver
7
                                    Anne B. Shaver (State Bar No.
8                                   255928)
                                    **LIEFF CABRASER HEIMANN**
9                                   **& BERNSTEIN, LLP**
                                    275 Battery Street, 29th Floor
10                                  San Francisco, CA  94111-3339
                                    Telephone:  415.956.1000
11                                  Facsimile:  415.956.1008
                                    ashaver@lchb.com
12

13                                  *Attorney for Plaintiffs*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO REMAND;
                                          MPA IN SUPPORT THEREOF
                                          Case No. 2:24-cv-06972